# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JEAN LEONARD
HARRIS,
                        *Debtor,*

_____

JEAN LEONARD HARRIS,
                        *Appellant,*

            v.                              No. 07-56310

SANDRA WITTMAN, an individual;              D.C. No.
JACK SWAIN, an individual; PYLE             CV-06-01939-WQH
SIMS DUNCAN & STEVENSON, a                  OPINION
Professional Corporation; GRANT
& ZEKO, a Professional
Corporation,
                        *Appellees.*

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
November 3, 2009—Pasadena, California

Filed December 21, 2009

Before: Ronald M. Gould and Carlos T. Bea, Circuit Judges,
and Donald W. Molloy,* District Judge.

Opinion by Judge Bea

_____

*The Honorable Donald W. Molloy, United States District Judge for the
District of Montana, sitting by designation.

16657

**COUNSEL**

M. Lance Jasper, Munger, Tolles & Olson, LLP, Los Angeles, California, for Jean Leonard Harris, the plaintiff-appellant.

Eric R. Deitz, Wingert Grebing Brubaker & Goodwin, LLP, San Diego, California, for Sandra Wittman, defendant-appellee. Manuel Corrales, Jr., Law Office of Manuel Corrales, Jr., San Diego, California, for Jack Swain, defendant-appellee. Robert F. Semmer, Coughlan, Semmer & Lipman, LLP, San Diego, California, for Pyle Sims Duncan & Stevenson, APC, defendant-appellee. Daniel M. White, White, Oliver & Amundson, APC, San Diego, California, for Grant & Zeko, APC, the defendant-appellee.

## OPINION

BEA, Circuit Judge:

Appellant Jean Leonard Harris ("Harris") was the petitioner-debtor in a now-closed Chapter 7 bankruptcy case. Here, he sued the bankruptcy trustee and other estate representatives for breach of contract. Harris alleges the bankruptcy trustee and her agents breached a contract that was entered into during the course of his underlying bankruptcy case and was directly related to the administration of bankruptcy estate assets.

This appeal requires us to answer whether the bankruptcy court had subject matter jurisdiction over this state law breach of contract claim, and whether the bankruptcy court's approval of the acts Harris now alleges breached the contract entitle the defendants to derived quasi-judicial immunity. We answer yes to both questions and so we affirm.

## I.   Factual and Procedural History

In July 1999, appellant Harris filed a voluntary petition for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court, Southern District of California. The bankruptcy court appointed appel-

lee Sandra Wittman ("Wittman") as trustee of the bankruptcy estate (the "estate") shortly thereafter.

In March 2000, Wittman filed an adversary proceeding against Harris and his wife, Mrs. Harris, for fraudulent conveyance. Wittman's complaint alleged the transfer from Harris to Mrs. Harris in June 1999—the month before he filed his voluntary bankruptcy petition—of a 1957 Mercedes-Benz, as well as a storage business and related property called Alpine Personal Storage (the "Alpine property"), was voidable and recoverable by the estate.

Trustee Wittman then entered into an Agreement for Use and Assignment of Interests and Prosecution of Claims (the "Assignment Agreement") with appellee Jack Swain, an unsecured creditor of the estate, which assigned to Swain the right to prosecute the adversary proceeding to set aside the alleged fraudulent conveyance. In exchange, Swain was to be paid 68% of the net recovery he obtained, and to be reimbursed for any of his costs. The Assignment Agreement also specified that Swain's counsel—the law firms of Pyle, Sims, Duncan & Stevenson, APC; and Grant & Zeko, APC (the "Attorney defendants")—would be entitled to recover their attorneys' fees from the estate. Wittman filed a motion for the bankruptcy court to approve the Assignment Agreement and appoint Swain as Special Representative of the estate. Harris received notice of the time and place of the motion. The bankruptcy court granted the motion, specifically approving all aspects of the Assignment Agreement, including the Attorney defendants' attorneys' fees.

In November 2002, Harris, Mrs. Harris, Sandra Wittman, and Jack Swain executed a written agreement that settled all the proceedings in the case (the "Settlement Agreement"). The bankruptcy court approved the Settlement Agreement in January 2003. According to the terms of that agreement, Harris and Mrs. Harris were required to transfer title to the Alpine property and the 1957 Mercedes-Benz to the bankruptcy

estate. However, Mrs. Harris retained an allowed secured claim for $218,000 as a lien against the Alpine property. Further, Wittman was not to sell the Alpine property unless the sale would yield sufficient funds to pay Mrs. Harris's said secured claim in full. As a final matter, the parties agreed to execute written mutual releases of any and all claims each had against the other that had arisen as of the date of the execution of the Settlement Agreement. A written release between Swain and Wittman, on the one hand, and Mr. and Mrs. Harris, on the other, was executed on November 22, 2002. The written release stated "the Parties agree this Agreement is a complete release of all claims the Parties have against one another arising from the . . . Bankruptcy."

On May 2, 2003, Wittman filed a Notice of Motion and Motion for Sale of Personal Property under 11 U.S.C. § 363(b), seeking an order permitting her to sell the Alpine property and the 1957 Mercedes-Benz to Swain. In support of her motion, Wittman filed a sworn declaration that stated the sale would be in the best interest of the bankruptcy estate because Swain would pay the estate $125,000; pay Mrs. Harris's $218,000 claim at the close of the sale of the Alpine property to satisfy her secured claim against the Alpine property, thereby relieving the estate of this liability; waive Swain's own claims against the estate for his costs and fees from the fraudulent conveyance proceeding; and assume the estate's liability for the attorneys' fees of the Attorney defendants. Altogether, Swain's waiver of claims and assumption of liability totaled around $900,000. Wittman's notice of sale set out a detailed accounting of the source of the estate liabilities that Swain was assuming. As in all noticed bankruptcy motions, Harris received notice of this motion.

The bankruptcy court approved the sale after a hearing on June 30, 2003. The court noted that the sale was free and clear

of Mrs. Harris's secured claim and that Jack Swain was to pay her claim in full at the close of the sale of the Alpine property.[1]

Almost three years later, on May 2, 2006, Harris filed the present suit in California state court in the Superior Court for the County of San Diego. He alleged breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and constructive fraud. Harris alleged that Wittman, Swain, and the Attorney defendants breached the Settlement Agreement in two ways: (1) by agreeing that Swain and the Attorney defendants were entitled to approximately $1 million in "contrived claims" against the estate stemming from the fraudulent conveyance proceeding because those claims had already been released by the Settlement Agreement, and (2) by Wittman's sale of the Mercedes-Benz and the Alpine property to Swain in exchange for $125,000 and the release of the one million in "contrived claims."

On May 15, 2006, Wittman successfully removed the case to the bankruptcy court that was administering Harris's estate. Harris filed a motion for remand, which was denied. All of the defendants filed motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) the complaint was barred under the *Barton* doctrine due to Harris's failure to obtain approval of the bankruptcy court prior to filing suit in state court, and (2) each defendant was entitled to derived quasi-judicial immunity as a result of the entry of the June 30, 2003 order, which approved the sale of the assets.

While the motions to dismiss were pending, Harris amended his complaint and eliminated all claims for relief except the breach of contract claim, which remained exactly as it was in the original complaint.

---

[1]The record does not establish whether Swain actually paid Mrs. Harris.

The bankruptcy court dismissed the complaint with respect to each defendant. The court held that (1) Harris's breach of contract claim was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O); (2) it had jurisdiction over the core proceeding pursuant to 28 U.S.C. § 1334; (3) Harris's complaint had to be dismissed under the *Barton* doctrine because Harris had not sought leave of the bankruptcy court before suing in state court; and (4) Wittman, Swain and the Attorney defendants were entitled to derived quasi-judicial immunity because the bankruptcy court had originally approved all aspects of the sale of the property.

Harris appealed this decision to the United States District Court for the Southern District of California. The district court affirmed on the same grounds. This timely appeal followed.

## II.    Jurisdiction and Standard of Review

This is an appeal from a final order of the district court affirming the bankruptcy court's grant of defendants' motions to dismiss for failure to state a claim for relief. We have jurisdiction under 28 U.S.C. § 1291.

We review the district court's acceptance of subject matter jurisdiction de novo, while reviewing any factual findings for clear error. *In re Harris Pine Mills*, 44 F.3d 1431, 1434 (9th Cir. 1995). We review de novo the grant of a motion to dismiss for failure to state a claim for relief. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III.   Analysis

### A.    The bankruptcy court had subject matter jurisdiction to adjudicate Harris's state law contract claim.

A bankruptcy court's jurisdiction is established by statute. 28 U.S.C. § 1334(b) gives federal district courts subject mat-

ter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[2] 28 U.S.C. § 157(a) allows district courts to refer any of these proceedings to bankruptcy courts.

[1] However, because bankruptcy judges are not Article III judges, the Constitution limits their ability to adjudicate—i.e., to render a final judgment—to issues that are at the "core" of the bankruptcy power.[3] Because of this limitation, 28 U.S.C. § 157(b)(1) provides bankruptcy judges authority to make binding decisions only in "core proceedings"[4] that arise under or arise in a case under Title 11. A bankruptcy judge may hear a non-core proceeding that is otherwise related to a case under Title 11, but there, the bankruptcy judge may make only proposed findings of fact and conclusions of law to the district judge, who reviews all non-core matters de novo. 28 U.S.C. § 157(c)(1).

---

[2]Title 11 of the United States Code contains the entire bankruptcy code. This includes Chapter 7, Chapter 11, and Chapter 13 bankruptcy cases.

[3]*See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (plurality opinion). Northern Pipeline filed bankruptcy, and shortly thereafter filed in the bankruptcy court a suit against Marathon for breach of contract relating to a pre-petition contract and pre-petition conduct of Marathon. *Id.* at 56. Marathon objected to the bankruptcy court's exercise of jurisdiction over the claim because the bankruptcy judges lacked the constitutional protections of Article III—salary protection and life tenure. *Id.* at 56-57. The Supreme Court, without majority opinion, held that bankruptcy court jurisdiction over the claim was unconstitutional. *Id.* at 87. Part of the rationale for the plurality was that Article III required the federal judicial power to be exercised by Article III judges with three exceptions: (1) territorial courts, (2) courts-martial for the military, and (3) disputes involving public rights as opposed to private rights. *Id.* at 65-70. However, *Marathon* has been interpreted narrowly. A majority of the Court in a later case clarified the holding in *Marathon* was only that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a *traditional* contract action arising under state law." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584 (1985) (emphasis added).

[4]The statute provides a non-exclusive list of core proceedings at 28 U.S.C. § 157(b)(2)(A)-(P).

1. **Harris's claim arose in his Chapter 7 bankruptcy case; therefore, the bankruptcy court could hear it.**

[2] "Arising under" and "arising in" jurisdiction are terms of art. "Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Harris Pine Mills*, 44 F.3d at 1435. Harris's breach of contract claim is not created or determined by Title 11; it is a common law action, therefore it does not qualify for "arising under" jurisdiction. The bankruptcy court, thus, had authority to hear Harris's claim only if the claim arose in his bankruptcy case. *See* 28 U.S.C. §§ 1334(b) & 157(a).

[3] A civil proceeding "arises in" a Title 11 case when it is not created or determined by the bankruptcy code, but where it would have no existence outside of a bankruptcy case. *Harris Pine Mills*, 44 F.3d at 1435. A state law contract claim could exist independent of a bankruptcy case, but "an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not." *Id.* at 1437.

In *Harris Pine Mills*, the plaintiff sued the bankruptcy trustee and the trustee's agents in Oregon state court. *Id.* at 1434. The plaintiff alleged state law tort claims consisting of fraud, negligence, and negligent misrepresentation surrounding the trustee's sale of one of the estate assets the plaintiff unsuccessfully attempted to purchase. *Id.* The trustee removed the case to federal district court, and sought to have the case referred to the bankruptcy court. *Id.* Plaintiff objected and moved to remand the case back to state court. *Id.* The district court denied the motion to remand and determined that it had jurisdiction under § 1334(b) because the state law claims arose in the bankruptcy case. *Id.* We affirmed.[5] *Id.* at 1438.

---

[5]As discussed *infra*, the court also determined that the state law claims were core bankruptcy proceedings. *Harris Pine Mills*, 44 F.3d at 1438.

Because the plaintiff sued the bankruptcy trustee for the trustee's conduct in administering the bankruptcy estate, the state law claims arose in the bankruptcy case and were subject to federal jurisdiction. *Id.*

**[4]** Here, although this is a state law cause of action, Harris's claim arose in his bankruptcy case because it could not exist independently of his bankruptcy case. Harris alleged that Wittman, the bankruptcy trustee, breached the Settlement Agreement by selling bankruptcy estate assets that she had agreed not to sell, in exchange for Swain's release of his claims against the estate and his assumption of other estate liabilities that Harris alleges were already released by the Settlement Agreement. Harris's claim is similar to the state law tort claims in *Harris Pine Mills*. Therefore, Harris's state law contract claim arose in his bankruptcy case, and it could be referred to the bankruptcy court.

## 2. This is a "core" bankruptcy proceeding; therefore, the bankruptcy court could make binding determinations.

**[5]** Core proceedings are listed in the statute at 28 U.S.C. § 157(b)(2). They include but are not limited to: matters concerning the administration of the estate, *Id.* § 157(b)(2)(A); orders approving the sale of property, *Id.* § 157(b)(2)(N); and other proceedings affecting the liquidation of the assets of the estate, *Id.* § 157(b)(2)(O). Subsections (A) and (O) are considered the "catchall" provisions, whereas subsections (B)-(N) are considered the more specific provisions. *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir. 1986). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Here, the district court found that Harris's claim was a core bankruptcy proceeding under subsections (A), (N), and (O). However, the district court erred with respect to subsection (N)—*orders* approving the sale of property—because Harris's breach of contract

claim does not challenge the bankruptcy court's *order* approving the sale of estate assets. Rather, Harris alleges breaches of contract on the basis of Wittman's conduct in selling the assets, and Swain's and the Attorney defendants' conduct in claiming previously released claims. Thus, there is core jurisdiction only if either subsection (A) or (O) is satisfied.

As discussed above, we concluded in *Harris Pine Mills* that the plaintiff's state law tort claims against the trustee for the trustee's conduct surrounding the sale of estate assets arose in the bankruptcy case. 44 F.3d at 1438. We also concluded that, under subsections (A) and (O), plaintiff's post-petition state law claims asserted against the bankruptcy trustee for conduct inextricably intertwined with the trustee's sale of estate assets were core proceedings. *Id.* We reasoned that the trustee's sale of the bankruptcy estate's assets was a core proceeding because it fell within the literal wording of § 157(b)(2)(A), matters concerning the administration of the estate. *Id.* at 1437; *see also In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir. 1987) (holding that a post-petition contract claim arising from the trustee's sale of estate assets "falls within the literal wording of 28 U.S.C. § 157(b)(2)(A) 'matters concerning the administration of the estate,' because it involves a claim that arose out of the administrative activities of [the trustee]").[6]

---

[6]In *Arnold Print Works*, the debtor—Arnold Print Works—filed for bankruptcy but continued to manage its property as a debtor-in-possession. 815 F.2d at 167. As part of an effort to administer the estate, Arnold Print Works sold some of its assets—printing rollers—to Apkin. *Id.* Apkin believed that Arnold Print Works had misrepresented the quality of the rollers, and refused to pay $9,000 of the $20,000 purchase price. *Id.* Arnold Print Works sued Apkin in bankruptcy court for breach of contract. *Id.* The First Circuit held that this post-petition state law contract claim was a core proceeding under the literal wording of 28 U.S.C. § 157(b)(2)(A) because the claim arose out of Arnold Print Works' actual administration of the estate in selling assets. *Id* at 168. The court also concluded that exercising jurisdiction over post-petition state law contract claims about the administration of the estate posed no problem under *Marathon*. *Id.* at 170-71.

**[6]** The facts in Harris's case are very similar to those in *Harris Pine Mills*. There, the plaintiff alleged the trustee's sale of estate assets was fraudulent. Here, Harris alleges the trustee's sale of estate assets was a breach of contract. Both causes of action arose from the trustee's post-petition conduct pursuant to the trustee's duty to administer the bankruptcy estate. Furthermore, because Swain paid for the assets in part by releasing his claims against the estate, and assuming the estate's liability for the Attorney defendants' attorneys' fees, Swain's and the Attorney defendants' alleged breach of contract in "contriving" those claims was inextricably intertwined with the sale of estate assets. Under *Harris Pine Mills*, therefore, Harris's proceeding is a core proceeding under § 157(b)(2)(A) because the breach of the Settlement Agreement was inextricably intertwined with the sale of estate assets—the literal administration of the bankruptcy estate.

**[7]** Although *Harris Pine Mills* appears to be directly on point and provides for core jurisdiction, Harris contends that an older Ninth Circuit opinion, *Castlerock*, prevents the conclusion that core jurisdiction exists over a state contract claim where that claim qualifies as a core proceeding only under subsection (A) or (O). In *Castlerock*, the state law contract action was already pending in state court when Castlerock filed for bankruptcy; at that point, the claim was automatically stayed. 791 F.2d at 160. The plaintiff filed for relief from the stay, but the bankruptcy court elected to try the claim as well as Castlerock's counterclaims. *Id.* The plaintiff objected to the bankruptcy court's jurisdiction over the state law claims at the pretrial conference, citing the Supreme Court's decision in *Marathon* for the proposition that bankruptcy jurisdiction over the claims was unconstitutional. The bankruptcy court nevertheless tried the state law claims and entered judgment for Castlerock. On appeal, the district court held the bankruptcy court did not have jurisdiction over the claims. *Id.* We affirmed, stating: "we hold that state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are related

proceedings under § 157(c) even if they *arguably* fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O)." 781 F.2d at 162 (emphasis added).

Harris contends this precludes core proceeding jurisdiction over his state law contract claim because the claim does not fall within one of the specific provisions of § 157(b)(2)(B)-(N). Harris is correct that core proceeding jurisdiction in his case exists only under the "catchall" provisions (A) and (O), not the specific provision (N), as discussed above. Thus, at first blush, it appears Harris's state law contract claim should not be considered a core proceeding under *Castlerock*, despite the similarity to *Harris Pine Mills*.

**[8]** However, at second blush, our holding in *Castlerock* is not as broad as Harris contends, and it certainly does not entirely eliminate subsections (A) and (O) of the statute from ever providing core proceeding jurisdiction to bankruptcy courts over state law contract claims. Rather, our main consideration to reach the holding in *Castlerock* was that "a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems." *Id.* Thus, the court concluded the "catchall" provisions should be interpreted narrowly in light of the Supreme Court's decision in *Marathon*. *Id*. Because exercising jurisdiction over the contract claim in *Castlerock* would have posed the same problem as the contract claim in *Marathon*, the *Castlerock* court was "persuaded" that the contract claim did not fall into either subsection (A) or (O) of § 157(b)(2), even if it *arguably* fell within a broad reading of those sections. *Id.* Thus, we held that state law contract claims that only "*arguably* fit within the literal wording of the two catchall provisions" should be considered non-core. *Id.* (emphasis added). Essentially, *Castlerock* holds that, under principles of constitutional avoidance, the otherwise broad "catchall" provisions of bankruptcy court core jurisdiction should be interpreted narrowly, not that there are *no circumstances* under which the "catchall" provisions can provide core jurisdiction. *Id.* at 162; *see In re Mankin*, 823

F.2d 1296, 1301 n.3 (9th Cir. 1987) (stating that *Castlerock* held only that a proceeding should not be characterized as core if to do so would raise constitutional problems and if a proceeding only "arguably" fell within one of the two catchall provisions).

**[9]** Here, *Castlerock* does not apply. First, Harris's state law contract claim does not *arguably* fall within § 157(b)(2)(A). Rather, our precedent compels the conclusion it *literally* falls within it. As the court in *Harris Pine Mills* noted, the sale of bankruptcy estate assets *is* an administrative activity of the bankruptcy trustee. 44 F.3d at 1437-38; *see also Arnold Print Works*, 815 F.2d at 168 (holding the sale of estate assets falls within the *literal* wording of subsection (A)). Therefore, Harris's claim does not just "relate" to the administration of the estate, his suit necessarily involves how the bankruptcy estate was administered. This is not like the pre-petition contract suits in *Castlerock* and *Marathon* that only *arguably* related to the administration of the estate because one of the parties to the contract was in bankruptcy. *See Marathon*, 458 U.S. at 90 (Rehnquist, J., concurring in the judgment) ("The lawsuit is before the Bankruptcy Court only because the plaintiff has previously filed a petition for reorganization in that court."). Harris's breach of contract claim arose from the administration of his bankruptcy estate. *Castlerock*, like *Marathon*, involved breach of contract claims that arose before and independent of the administration of bankruptcy assets.

**[10]** Furthermore, unlike in *Castlerock*, there is no potential Article III problem under the Supreme Court's decision in *Marathon* with the bankruptcy court's exercise of jurisdiction over Harris's post-petition contract claim. There was no majority opinion in *Marathon*. The plurality reasoned that private right suits, as opposed to public right suits, must be adjudicated by Article III courts, and that "Northern's right to recover contract damages to augment its estate is one of private right." *Marathon*, 458 U.S. at 71 (internal quotation mark

omitted). But a majority of the Court in a later case clarified that the holding in *Marathon* was only that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a *traditional* contract action arising under state law." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584 (1985) (emphasis added).

**[11]** Although the Ninth Circuit has not yet addressed whether post-petition contract claims arising from the trustee's sale of assets pass constitutional muster under *Marathon*, the First Circuit has held that they do. *See Arnold Print Works*, 815 F.2d at 170-71. The *Arnold Print Works* court held "[t]he Constitution permits a non-Article III bankruptcy court to adjudicate post-petition claims related to administration or liquidation of a debtor's estate because the claims are . . . distinguishable from those at issue in *Marathon*." *Id.* at 169. The First Circuit reasoned that the pre-petition "traditional" contract at issue in *Marathon* was distinguishable from a contract entered into post-petition with the bankruptcy trustee and made under the supervision of the bankruptcy court because the latter are not traditional contracts under state law *Id.* at 170. Rather, because the trustee is an officer of the court, and because the contract was approved by the bankruptcy court, such a post-petition contract is much more like a public rights case than a private rights case. *Id.*

**[12]** The First Circuit's reasoning is equally applicable here. Harris's contract claim is not a "traditional" contract action because the Settlement Agreement he claims was breached only came into being post-petition and was made with the trustee and Special Representative of the estate. Further, its terms directly related only to the administration of the bankruptcy estate. Harris's claim is thus distinguishable from the suit at issue in *Marathon*, and there is no problem with a bankruptcy court exercising jurisdiction over it. Because there is no constitutional problem under *Marathon*, and because Harris's contract suit more than "arguably" fits within subsec-

tion (A), *Castlerock* does not apply and core proceeding jurisdiction existed under our holding in *Harris Pine Mills*.

**B.	The district court erred when it dismissed Harris's suit for lack of subject matter jurisdiction under the *Barton* doctrine.**

**[13]** The district court erred when it affirmed the bankruptcy court's dismissal of Harris's suit for lack of subject matter jurisdiction under the *Barton* doctrine, because the *Barton* doctrine is not a ground to dismiss a suit that is proceeding in the appointing bankruptcy court. As applied in the Ninth Circuit, the *Barton* doctrine requires "that a party must first obtain leave of the bankruptcy court before it initiates an action *in another forum* against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005) (emphasis added). Without leave of the court that appointed the trustee (the "appointing court"), "the *other forum* lack[s] subject matter jurisdiction over the suit." *Id.* at 971 (emphasis added). That is to say, "[a] court *other than* the appointing court has no jurisdiction to entertain an action against the trustee for acts within the trustee's authority as an officer of the court without leave of the appointing court." *Id.* at 974 (emphasis added). The rationale for this doctrine is that "[t]he requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be brought *either* in bankruptcy court or with leave of the bankruptcy court." *Id.* at 971 (emphasis added).

Here, it is undisputed that Harris did not seek leave of the appointing court before filing his claim in state court. As a result, when the case was removed to bankruptcy court, the bankruptcy court held that, under the *Barton* doctrine, even as the appointing court, it did not have subject matter jurisdiction to hear Harris's claim, and so dismissed the suit.

This was error, however, because, absent leave of the appointing court, the *Barton* doctrine denies subject matter jurisdiction to all forums *except* the appointing court. The *Barton* doctrine is a practical tool to ensure that all lawsuits that could affect the administration of the bankruptcy estate proceed either in the bankruptcy court, or with the knowledge and approval of the bankruptcy court. The *Barton* doctrine is not a tool to punish the unwary by denying *any* forum to hear a claim when leave of the bankruptcy court is not sought. When Harris's case was removed to the appointing bankruptcy court, all problems under the *Barton* doctrine vanished. Therefore, the district court erred in affirming the bankruptcy court's dismissal of Harris's suit for lack of subject matter jurisdiction under the *Barton* doctrine.

**[14]** However, this error does not affect the result because we affirm on the alternate ground given by both the district court and the bankruptcy court, that is: All of the defendants are entitled to derived quasi-judicial immunity; therefore, Harris fails to state a claim upon which relief can be granted.

### C.  Appellees are entitled to derived quasi-judicial immunity.

The district court did not err when it held that Wittman, Swain, and the Attorney defendants were entitled to derived quasi-judicial immunity. "Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order." *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989). Additionally, "court appointed officers who represent the estate are the functional equivalent of a trustee." *Crown Vantage*, 421 F.3d at 973. The doctrine of judicial immunity also applies to court approved attorneys for the trustee. *Smallwood v. United States*, 358 F. Supp. 398, 404 (E.D. Mo. 1973), *aff'd mem.*, 486 F.2d 1407 (8th Cir. 1973). Here, Wittman as trustee, Swain as the functional equivalent of the trustee for the purpose of prosecuting the fraudulent conveyance proceeding, and the Attorney

defendants as the court-approved counsel for Swain all qualify for derived quasi-judicial immunity.

For derived quasi-judicial immunity to apply, the defendants must satisfy the following four elements: (1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy court approved their acts. *Bennett*, 892 F.2d at 823, 825; *see also In re Jacksen*, 105 B.R. 542, 545 (9th. Cir. B.A.P. 1989) (holding a trustee has immunity for actions "within the scope of the authority conferred upon him by statute or the court").

### 1. Wittman is entitled to derived quasi-judicial immunity.

**[15]** Harris alleged Wittman breached the Settlement Agreement when she agreed that Swain was entitled to be paid from the estate approximately $1 million in "contrived claims" that had already been released by the Settlement Agreement, and when she sold the assets to Swain in exchange for $125,000 cash and Swain's release of those claims. These acts of Wittman meet all four elements for derived quasi-judicial immunity.

First, Wittman's sale of the estate assets, as well as her determination that the consideration Swain was to pay for those assets was in the best interest of the estate, were within the scope of her statutorily conferred authority as trustee. 11 U.S.C. § 704(a)(1). Second, Wittman filed notice of the proposed sale, and served Harris with such notice, on May 2, 2003. Third, the notice fully set out the details of the proposed sale of the Alpine property and 1957 Mercedes-Benz to Jack Swain, including the consideration Swain was to pay. The notice explained that Wittman believed the sale was in the best interest of the estate, that Swain was releasing the estate from liability for all the fees and costs associated with his prosecution of the fraudulent conveyance proceeding in his

role as Special Representative of the estate, including the attorneys' fees of the Attorney defendants. The notice also provided a detailed accounting of the source of said fees and costs. Fourth, and finally, the bankruptcy court, after a hearing, approved the sale.

## 2. Swain and the Attorney Defendants are entitled to derived quasi-judicial immunity.

**[16]** Harris alleged Swain and the Attorney defendants breached the Settlement Agreement because the approximately $1 million of estate liability—including the Attorney defendants' attorneys' fees from the fraudulent conveyance proceeding, Swain's fees and costs from that proceeding, and Sandra Harris's $218,000 lien against the Alpine property—that Swain was releasing or assuming in exchange for the estate assets had already been released by the terms of the settlement. Thus, Swain and the Attorney defendants were asserting rights to be paid from the estate, which Harris alleges they had agreed to release. However, Swain and the Attorney defendants, similarly to Wittman, satisfy all four elements for derived quasi-judicial immunity.

First, their acts of making claims against the estate for their costs and fees associated with the fraudulent conveyance proceeding were within the scope of the authority conferred to them by the bankruptcy court. Under the Assignment Agreement, Swain was authorized to recover from the estate his costs of prosecuting the estate's fraudulent conveyance proceeding against Harris and Mrs. Harris and 68% of the net recovery from that proceeding. The Attorney defendants were also authorized, under the Assignment Agreement, to recover their fees from the estate. The bankruptcy court specifically approved the Assignment Agreement and therefore authorized their recovery of fees and costs. Second, Harris had notice that Swain and the Attorney defendants were making these claims when Wittman served Harris with notice of the proposed sale on May 2, 2003, which notice included a detailed

account of these claims. Third, the notice fully set out the claims Swain and the Attorney defendants had against the estate and the source of all of their claims. Fourth and finally, after a hearing, the bankruptcy court approved all of these claims, and Swain's release or assumption of those claims in exchange for the Alpine property.

[17] Thus, all of the appellees are entitled to derived quasi-judicial immunity.

**AFFIRMED.**