**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re:  MEHRI AKHLAGHPOUR

*Debtor*.

No. 24-2625

BAP No.
23-1059

MEHRI AKHLAGHPOUR,

*Appellant*.

v.

GIOVANNI ORANTES; LUIS
SOLORZANO; ORANTES LAW
FIRM,

*Appellees*.

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
William J. Lafferty, III, Gary A. Spraker, and Scott H. Gan,
Bankruptcy Judges, Presiding

Argued and Submitted May 19, 2025
Pasadena, California

Filed January 20, 2026

Before: Kim McLane Wardlaw and Anthony D. Johnstone, Circuit Judges, and Scott H. Rash, District Judge.[*]

Opinion by Judge Rash

## SUMMARY[**]

**Bankruptcy**

The panel: (1) reversed the Bankruptcy Appellate Panel's decision reversing the bankruptcy court's order granting a debtor's motion for leave to continue prosecuting an ongoing state court legal malpractice suit against her former bankruptcy counsel; (2) vacated the bankruptcy court's order in part; and (3) remanded with instructions to the bankruptcy court.

Under the *Barton* doctrine, a person who sues a lawyer appointed by the bankruptcy court for acts done in the lawyer's official capacity in a forum other than bankruptcy court must seek leave of the bankruptcy court to do so. Under the *Rooker-Feldman* doctrine, federal district courts generally lack jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review

---

[*] The Honorable Scott H. Rash, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and rejection of those judgments. The panel held that a bankruptcy court's order granting leave to sue under the *Barton* doctrine does not amount to a modification of state court decisions arising from an improperly filed state court action. Accordingly, the *Rooker-Feldman* doctrine did not bar the debtor's *Barton* motion.

The panel held that although the bankruptcy court did not abuse its discretion in granting leave pursuant to *Barton*, it did abuse its discretion to the extent that its approval was inconsistent with a decision of the California Court of Appeal. The panel held that if claims subject to *Barton* are asserted in another forum without prior approval, and the bankruptcy court later grants leave to proceed on those claims after the other forum has already issued a decision, then the bankruptcy court's order should be narrowly tailored to the jurisdictional issue and avoid implying that its approval grants any other relief. The bankruptcy court also abused its discretion by granting *Barton* approval for post-trustee-appointment claims not subject to the doctrine. The panel remanded to the bankruptcy court with instructions to enter an order granting *Barton* approval to file claims in state court that are consistent with the California Court of Appeal's decision.

## COUNSEL

Farrah A. Mirabel (argued), Law Office of Farrah Mirabel, Los Angeles, California, for Appellant.

Corinne C. Bertsche (argued), Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; David Samani, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; for Appellees.

# OPINION

RASH, District Judge:

Under *Barton* and its bankruptcy-tailored progeny, a person who sues a lawyer appointed by the bankruptcy court for acts done in the lawyer's official capacity in a forum other than bankruptcy court must seek leave of the bankruptcy court to do so. *See generally Barton v. Barbour*, 104 U.S. 126 (1881). In this case, we consider the extent to which the *Barton* doctrine intersects with the *Rooker-Feldman* doctrine. In other words, we must decide whether a bankruptcy court's order granting leave to sue amounted to a modification of state court decisions arising from an improperly filed state court action. We hold it does not, and, therefore, reverse the Bankruptcy Appellate Panel's decision. However, because the bankruptcy court otherwise abused its discretion, we vacate the bankruptcy court's order in part and remand to the bankruptcy court with instructions under our clarified standards detailed below.

## I.    Background

This appeal arose following Debtor Mehri Akhlaghpour's success in obtaining leave of the bankruptcy court to continue, rather than begin, an ongoing legal malpractice suit in state court against her former bankruptcy attorney, Giovanni Orantes, and his firm (collectively, "Orantes" or "Appellees").

### a.    Underlying Bankruptcy & Related Events

In late 2017, Akhlaghpour met with Orantes to discuss the possibility of filing a bankruptcy petition. During the meeting, Orantes recommended a Chapter 11 petition and Akhlaghpour agreed to filing it. On October 11, 2017,

Akhlaghpour filed a voluntary Chapter 11 petition through Orantes as her counsel. The bankruptcy court approved Orantes as counsel for the estate effective as of the petition's filing.

Due to suspicions regarding the timing of liens recorded against Akhlaghpour's properties, on February 4, 2018, the bankruptcy court appointed a trustee who immediately sought to liquidate Akhlaghpour's properties. Two months later, after some properties had been sold by the trustee, Orantes moved to dismiss the petition. The bankruptcy court denied the motion on May 15, 2018, in part due to the expense already incurred to liquidate the properties.

b. Related State Court Decisions

On December 27, 2019, Akhlaghpour sued Orantes in the Los Angeles County Superior Court ("superior court") for legal malpractice related to her bankruptcy. She later filed a First Amended Complaint. Orantes moved to dismiss the complaint on three grounds: the *Barton* doctrine, res judicata based on approval of the fee application, and Akhlaghpour's lack of standing because the claims belonged to the bankruptcy estate. The superior court granted the motion without leave to amend and dismissed the action "solely based upon the *Barton* doctrine."

The California Court of Appeal for the Second District of California reversed in part and affirmed in part. *Akhlaghpour v. Orantes*, 86 Cal. App. 5th 232 (2022). Specifically, the Court of Appeal held the *Barton* doctrine applied to Akhlaghpour's claims against Orantes for actions

taken as debtor-in-possession[1] counsel but did not apply to claims for actions taken as debtor-out-of-possession counsel—i.e., after the trustee was appointed on February 4, 2018—finding Orantes had concluded his court-approved representation on February 6, 2018. *Id.* at 248–49. Specifically, the court noted that "rather than depending on timing, application of the *Barton* doctrine here depends on whether the suit involves actions taken by a court-approved officer in his or her official capacity to administer the estate or protect its assets (it did) and whether the claims were part of the estate (they were)." *Id.* at 248. In a footnote, the appeals court stated it expressed "no opinion regarding the extent to which allegations of malpractice occurring after a trustee appointment could—similar to prepetition conduct— 'cross the divide' and implicate the *Barton* doctrine. That issue may depend, in part, on the nature of the allegations Akhlaghpour chooses to make in any amended complaint." *Id.* at 249 n.8.[2] When discussing the propriety of leave to amend, the court emphasized that "the *Barton* doctrine and Orantes's fee application order do not bar the limited subset of Akhlaghpour's potential claims based on Orantes's actions as her counsel as a debtor out of possession beyond February 6, 2018, after the trustee appointment," so long as any amended complaint were to establish standing. *Id.* at 254.

---

[1] When a trustee is appointed in a Chapter 11 case, the debtor previously "in-possession" becomes a debtor "out of possession," and at that point, or sometime soon after, his or her lawyer no longer serves as the lawyer for the estate.

[2] Unfortunately, the amended complaint Akhlaghpour presumably filed in state court does not appear in the record for this bankruptcy appeal.

c.  Proceedings Below

On February 2, 2023, the bankruptcy court reopened Akhlaghpour's case upon her motion.  Soon thereafter, she filed a motion under *Barton* seeking authorization "to continue her prosecution of the pending" superior court action.  After the motion was fully briefed, the court held a hearing.  At some point before the hearing, the bankruptcy court issued a tentative ruling:

> Grant with respect to the period of time from and including October 5, 2017 to October 10, 2017.  As noted by the State of California Court of Appeal, this period of time is not subject to the doctrine of res judicata.

> With respect to movant's claims, neither the *Barton* doctrine nor res judicata apply for the period of time following February 6, 2018.  Consequently, for that period of time as well, the movant may pursue any claims against the defendants in the state court litigation.

During the hearing, the bankruptcy court heard from the parties and found there was a prima facie case sufficient to support its *Barton* approval.[3]  Accordingly, the bankruptcy court granted in part and denied in part the *Barton* motion, consistent with its tentative ruling on the appropriate timeframes.  Orantes appealed to the Bankruptcy Appellate Panel ("BAP").

---

[3] Throughout this opinion, we will refer to the bankruptcy court's decision as either "granting leave pursuant to *Barton*" or "*Barton* approval."  We use these terms interchangeably.

In a split decision, the BAP vacated the bankruptcy court's order and remanded with instructions for the bankruptcy court to dismiss the *Barton* motion for lack of jurisdiction. The BAP majority concluded "the bankruptcy court authorized the continued litigation of claims that had previously been dismissed." Specifically, the majority reasoned the bankruptcy court's order violated the *Rooker-Feldman* doctrine because it "reverse[d], modif[ied], or at least, ignore[d]" the Court of Appeal and superior court rulings.

The BAP dissent concluded that granting leave under *Barton* can never violate the *Rooker-Feldman* doctrine. The dissenting judge reasoned "[t]he order does not allow Akhlaghpour to amend her complaint to assert the prepetition claims; it merely authorizes her to proceed in the case unfettered by the *Barton* doctrine's jurisdictional bar." Moreover, the dissent concluded "Akhlaghpour may 'continue' with her pending case, but she remains bound by procedural and substantive law of the state court, including the Court of Appeal's decision denying leave to amend the complaint to allege claims barred by the *Barton* doctrine." According to the dissent, "[n]othing in the bankruptcy court's order purports to change this," and, therefore, the dissenting judge "would affirm the bankruptcy court's decision to grant *Barton* leave for prepetition claims and modify the order to clarify that nothing in the bankruptcy court's order affects state procedural or substantive law in the case."

After the BAP denied Akhlaghpour's motion for rehearing, Akhlaghpour timely appealed to this Court.

## II.    Discussion

We review de novo the BAP's conclusions of law and independently review the bankruptcy court's decision appealed to the BAP. *In re Cool Fuel, Inc.*, 210 F.3d 999, 1001–02 (9th Cir. 2000). We review for abuse of discretion the bankruptcy court's decision to grant leave to sue in another forum pursuant to *Barton*. *See In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1094 (9th Cir. 2016); *see also In re Kashani*, 190 B.R. 875, 885–86 (9th Cir. BAP 1995).

### a.    Application of the *Barton* Doctrine

In *Barton v. Barbour*, the Supreme Court held suits against receivers[4] in courts other than the court charged with administration of the estate were barred by common law. 104 U.S. at 127. In the bankruptcy context, this doctrine generally requires a debtor to obtain leave of the bankruptcy court before filing suit in another forum against an "officer appointed by the bankruptcy court for acts done in the officer's official capacity." *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005); *see also id.* at 976 ("The essence of the *Barton* doctrine is that parties may not commence or maintain unauthorized litigation.").

Our prior decisions indicate subsequent bankruptcy court approval can cure a jurisdictional issue arising from a suit filed without *Barton* approval. *See In re Harris*, 590 F.3d 730 (9th Cir. 2009). In *Harris*, the plaintiff sought to

---

[4] A receiver is a "disinterested person appointed by a court, or by a corporation or other person, for the protection or collection of property that is the subject of diverse claims (for example, because it belongs to a bankrupt or is otherwise being litigated)." *Receiver*, Black's Law Dictionary (12th ed. 2024).

sue the bankruptcy trustee along with several other individuals in California state court, and the case was removed to the bankruptcy court by the trustee. *Id.* at 736. Relevant here, the bankruptcy court dismissed the complaint under the *Barton* doctrine because the plaintiff had not sought leave of the bankruptcy court before suing in state court. *Id.* We held this dismissal was erroneous, explaining *Barton* only precluded litigation in another forum without the bankruptcy court's leave, and once the case was removed to the bankruptcy court, the jurisdictional defect was cured. *Id.* at 741–42. We now clarify how this rule operates when *Barton* leave is granted after state courts have issued decisions in the case.

Although the instant case arose in a slightly different context—a plaintiff seeking permission after filing in state court as opposed to a defendant seeking removal to the bankruptcy court—the rationale remains the same. Appellees' arguments to the contrary subvert the rationale of *Harris*, require us to extrapolate quotes from prior decisions to their most extreme degree, and ignore the purpose of the *Barton* doctrine altogether. Therefore, we hold a bankruptcy court may provide *Barton* permission after a case in another forum has been initiated. *See id.* at 742 ("[A]bsent leave of the appointing court, the *Barton* doctrine denies subject matter jurisdiction to all forums *except* the appointing court."). We address Appellees' three main arguments offered for departing from our prior decisions in turn.

First, Appellees assert the bankruptcy court can do no more than "order cessation of the improper action," as this is the "only appropriate remedy" for failing to obtain leave under *Barton* in the first instance. *See Crown Vantage*, 421 F.3d at 976. This statement cannot be read as broadly as Appellees suggest, however, because it was nestled within a

discussion about the standards the bankruptcy court should apply when deciding whether to enjoin a suit filed in the absence of *Barton* approval pursuant to 11 U.S.C. § 105. *Id.* That opinion, especially its section discussing the bankruptcy code's unique statutory requirements governing injunctions, does not speak to the standards a bankruptcy court should apply when contemplating other actions, such as granting approval to proceed on certain claims in another forum in an ongoing case. It would be illogical to apply this language in circumstances such as these, where the bankruptcy court acted pursuant to a common-law rule in granting leave to sue, rather than in response to a party's motion to enjoin proceedings.[5] Accordingly, the statement about "the only appropriate remedy" being cessation of the action, put in its proper context, does not support Appellees' proffered rule, which would require an action filed without *Barton* approval to be functionally enjoined as a matter of course.

Appellees highlight other language from *Crown Vantage* as supportive of their position—"a party must *first* obtain leave of the bankruptcy court before it *initiates* an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *Id.* at 970 (emphasis added). Yet this language still does not explain what happens in a case where some claims may relate to official duties and some do not, as is the case here. Therefore, these generic statements in *Crown Vantage* do not mandate, or even support, ruling in favor of Appellees' extreme rule.

---

[5] We note Appellees could have moved to reopen the bankruptcy case and to enjoin the state court proceedings pursuant to 11 U.S.C. § 105, but they did not do so.

Second, we are not persuaded by Appellees' assertion that a suit filed without *Barton* approval is void ab initio and, by extension, the bankruptcy court can do nothing to cure the failure to seek leave in the first instance.[6]  This proposed rule fails to account for the fact that some claims within a complaint may require *Barton* approval while others will not.  It follows that failure to get *Barton* approval for one claim cannot render the entire suit null from the beginning.  And, even so, this problem would be for the state court (or other forum of a plaintiff's choosing) to sort out, not for the bankruptcy court evaluating a parallel *Barton* motion to take into consideration.  Lastly, and critically, the void ab initio rule fails to comport with *Harris*.  *See Harris*, 590 F.3d at 741–42.

Third, the bankruptcy court's order was not nunc pro tunc.  Such orders are generally understood as "[h]aving retroactive legal effect through a court's inherent power." *Nunc pro tunc*, Black's Law Dictionary (12th ed. 2024).  To support their nunc pro tunc characterization, Appellees cite a district court case, *In re Sedgwick*, 560 B.R. 786 (Bankr. C.D. Cal. 2016), and note "*Barton* permission could not be obtained retroactively and . . . even if such permission was sought by nunc pro tunc order, 'exceptional circumstances' must be shown to excuse the failure to seek *Barton* approval prior to the commencement of the state court proceedings." *Sedgwick* is of no moment because Akhlaghpour sought neither retroactive approval nor nunc pro tunc relief.  *Barton* approval following an unauthorized suit can only operate to remove a jurisdictional bar to future actions in another forum and does not have retroactive legal effect through the

---

[6] Void ab initio means "[n]ull from the beginning."  *Void ab initio*, Black's Law Dictionary (12th ed. 2024).

bankruptcy court's inherent power.[7]  Therefore, it cannot be characterized as nunc pro tunc.

Appellees seem to ask us to adopt a one-strike rule requiring dismissal of the suit filed without *Barton* approval while recognizing a plaintiff may refile anew in another forum once *Barton* approval is obtained.  As detailed above, Appellees provide no mandatory authority for such a rule nor any compelling justification.  Moreover, as a practical matter, this rule is unworkable.  For example, the *Barton* authorization requirement serves an important function where there is ambiguity as to the capacity in which an actor was operating, such as counsel for a client who later becomes a debtor, counsel for a prospective debtor, court-approved counsel for a debtor-in-possession, and later counsel for a debtor-out-of-possession or the estate.  Were we to adopt a rule requiring dismissal of the suit in the other forum before the bankruptcy court could grant leave under *Barton*, even though the plaintiff would likely refile the same action anew, that rule would needlessly fragment related matters based on counsel's shifting capacities.  Appellees have not demonstrated how such a rule would advance the purpose underlying the *Barton* doctrine

Allowing the bankruptcy court to grant *Barton* approval after an unapproved lawsuit is filed in another forum supports, rather than hampers, the purpose of the *Barton* doctrine.  As recognized in *Crown Vantage*, the *Barton*

---

[7] As an example to illustrate this point, Akhlaghpour's success in seeking leave from the bankruptcy court to sue in California state court does not retroactively revive those claims that were dismissed without leave to amend by the state court.  This is the case even though we view the Court of Appeal's leave to amend analysis as based upon a flawed holding that Akhlaghpour could not amend her complaint to state she had obtained leave to sue pursuant to *Barton*.

doctrine was extended to the bankruptcy context because one appointed by the bankruptcy court is "a statutory successor to the equity receiver" and works "in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." 421 F.3d at 971 (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). Indeed, the Seventh Circuit in *Linton* spelled out a scenario in which a plaintiff could cure its failure to first seek *Barton* approval: "the trustee could move the state court to dismiss the suit, *or to stay it until the necessary leave was obtained . . . .*" 136 F.3d at 546 (emphasis added). Allowing a bankruptcy court to have a say at some point after a plaintiff initiates litigation in a non-bankruptcy forum does not disturb the purposes of the *Barton* rule.

We emphasize the gold standard is to file a *Barton* motion before filing a suit that in any way could touch upon acts performed in an official bankruptcy capacity. However, in the event it becomes clear such approval is required at some point after the litigation has begun and such approval was not previously sought, we clarify the best practice for a plaintiff would be to request to stay proceedings in the other forum as soon as a potential *Barton* issue arises and immediately seek *Barton* approval. This procedure achieves the same ends as the standard *Barton* procedure—allowing the bankruptcy court to decide the proper forum for the claims before that issue is decided in another forum. And, more importantly, this procedure avoids the problems that

arose here by allowing the bankruptcy court to decide the *Barton* motion at a much earlier stage.[8]

  b. <u>Interplay of *Barton* and *Rooker-Feldman* Doctrines</u>

  Under the *Rooker-Feldman* doctrine, federal district courts generally lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *accord Brown v. Duringer L. Grp. PLC*, 86 F.4th 1251, 1253–54 (9th Cir. 2023). However, the *Rooker-Feldman* doctrine applies only in "limited circumstances." *Exxon Mobil Corp.*, 544 U.S. at 291; *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006). For example, in the bankruptcy context, we have noted the *Rooker-Feldman* doctrine does not curtail federal courts' authority to enforce the automatic stay. *In re Gruntz*, 202 F.3d 1074, 1084 (9th Cir. 2000).

  We hold the bankruptcy court's order granting Akhlaghpour's motion for leave pursuant to *Barton* did not violate the *Rooker-Feldman* doctrine. Akhlaghpour's motion sought leave under *Barton*, which, if granted, would only remove a jurisdictional bar to subsequent proceedings on a limited subset of claims against Orantes in California state court. While Akhlaghpour is a "state-court loser" in the

---

[8] Although it ultimately did not affect the outcome of this appeal, we are troubled by how long Akhlaghpour waited to seek leave pursuant to *Barton*. We are also troubled that Appellees seem ignorant of the tools available to them to seek earlier bankruptcy court intervention, if desired, either by trying to remove to bankruptcy court or by filing a motion to enjoin the state court proceedings in bankruptcy court.

sense that she lost on the *Barton* issue in state court, it is not clear that she is seeking review or rejection of the California Court of Appeal's judgment. Instead, Akhlaghpour returns to the bankruptcy court to remove the jurisdictional impediment imposed by the *Barton* doctrine and to continue her lawsuit in the California courts, purportedly, in a manner consistent with the Court of Appeal's opinion. The essence of this motion is markedly different than the attempts the *Rooker-Feldman* doctrine prohibits.

Moreover, the appeals court opinion not only allowed Akhlaghpour narrow leave to amend to replead certain claims but also alluded to the fact that she may need to obtain *Barton* approval. The court noted whether *Barton* approval is necessary depends on the nature of the allegations regarding the post-trustee-appointment conduct and whether they "cross the divide." *Akhlaghpour*, 86 Cal. App. 5th at 249 n.8. Rather than "inviting [bankruptcy] court review and rejection of those judgments," *Exxon Mobil Corp.*, 544 U.S. at 284, the *Barton* order attempted, albeit in a flawed fashion, to follow the guidance set out in the Court of Appeal's decision insofar as it held *Barton* would apply to claims that may "cross the divide," as explained in the court's footnote.

Even if the motion for leave under *Barton* attempted to subvert a state court judgment on its face, we would still not conclude a bankruptcy court's order granting leave necessarily violates *Rooker-Feldman*. Leave to sue under *Barton* can never do more than remove a jurisdictional bar to proceeding in a particular forum. To be sure, there is some tension between the bankruptcy court's order and the Court of Appeal's opinion. As written, the bankruptcy court's order could be read to conflict with the limited remand the appeals court granted. But, as we detail below, rather than

posing a *Rooker-Feldman* problem, this conflict relates to whether the bankruptcy court abused its discretion in granting leave to sue. We would be hard pressed to analogize the bankruptcy court's imprecisely crafted order to those limited circumstances in which the Supreme Court has recognized *Rooker-Feldman* deprives a court of jurisdiction.

In fact, if we were to hold otherwise, we would undermine the exclusive nature of a bankruptcy court's authority to consider whether an officer it appointed to help administer a bankruptcy estate can be sued for his or her official acts in another forum—the very essence of the *Barton* doctrine. Such a holding would require us to not only extend the *Rooker-Feldman* doctrine far beyond its intended reach but would also extinguish the *Barton* doctrine in cases where underlying state court judgments may exist. We are unwilling to contort both doctrines to such a degree.

### c.   The Bankruptcy Court's Error

Most of our cases address the bankruptcy court's discretion to *deny* leave under *Barton*. We have never held a bankruptcy court's grant of *Barton* approval after a state court had already issued a decision was an abuse of discretion. This is because we presume the factual circumstances underlying this appeal rarely occur, meaning a party rarely attempts to file a complaint against court-approved counsel for the bankruptcy estate without first obtaining *Barton* approval. Nevertheless, we hold the bankruptcy court abused its discretion here and clarify the standards that apply in this situation.

Although the bankruptcy court did not abuse its discretion in granting leave pursuant to *Barton*, it abused its discretion to the extent its approval was inconsistent with the

Court of Appeal's decision. Its order authorizing Akhlaghpour to "continue her prosecution . . . for the period of October 5, 2017 to October 10, 2017," could be read to conflict with the Court of Appeal's ruling that dismissed those pre-petition claims with prejudice. *See Akhlaghpour*, 86 Cal. App. 5th at 246–47, 257. It did not convey the true import of *Barton* approval, which serves merely to remove a jurisdictional bar. When, as here, an underlying state court ruling exists, the bankruptcy court does not write on a blank slate when evaluating a *Barton* motion.

Therefore, we hold that if claims subject to *Barton* are asserted in another forum without prior approval, and the bankruptcy court later grants leave to proceed on those claims after the other forum has already issued a decision, then the bankruptcy court's order should be narrowly tailored to the jurisdictional issue and avoid implying its approval grants any other relief.

Moreover, we conclude the bankruptcy court abused its discretion by granting *Barton* approval for post-trustee-appointment claims the court acknowledged were not subject to *Barton* in the first instance. The bankruptcy court stated because the *Barton* doctrine and res judicata did not apply for the period of time following February 6, 2018, "the movant may pursue any claims against the defendants in the state court litigation" for that timeframe. However, if the *Barton* doctrine does not apply, as the bankruptcy court stated, then *Barton* approval for those claims is not required. Therefore, the bankruptcy court abused its discretion by not limiting the *Barton* approval for post-trustee-appointment claims to claims the state court held may "cross the divide," as noted in the appellate decision's footnote. *See Akhlaghpour*, 86 Cal. App. 5th at 249 n.8.

## III. Conclusion

We reverse the BAP's order vacating the bankruptcy court's order granting leave pursuant to *Barton* because the bankruptcy court's order does not violate the *Rooker-Feldman* doctrine. Additionally, we vacate the bankruptcy court's order because the bankruptcy court abused its discretion by granting *Barton* approval for the pre-petition claims in a manner that went beyond addressing the removal of the jurisdictional bar, and by granting *Barton* approval for post-trustee-appointment claims not subject to the doctrine. Accordingly, we remand to the bankruptcy court with instructions to enter an order granting *Barton* approval to file claims in state court that are consistent with the California Court of Appeal's decision. *See Akhlaghpour*, 86 Cal. App. 5th at 249 n.8.

**REVERSED, VACATED, and REMANDED.**