FILED

AUG 25 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1424-KuFKi |
| ) | |
| GACN, INC., ) | Bk. No.   14-13695 |
| ) | |
| Debtor. ) | Adv. No.   15-01135 |
| _____ ) | |
| ) | |
| CERTAIN UNDERWRITERS AT LLOYDS,) | |
| SYNDICATES 2623/623, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **OPINION** |
| ) | |
| GACN, INC., ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on June 23, 2016
at Pasadena, California

Filed – August 25, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

_____

Appearances:     Ross Smith of Troutman Sanders LLP argued for
                 appellant Certain Underwriters at Lloyds,
                 Syndicates 2623/623; Simon Aron of Wolf, Rifkin,
                 Shapiro, Schulman & Rabkin, LLP argued for
                 appellee GACN, Inc.

_____

Before:  KURTZ, FARIS and KIRSCHER, Bankruptcy Judges.

KURTZ, Bankruptcy Judge:

## INTRODUCTION

This appeal originates from an adversary proceeding filed by chapter 11[1] debtor GACN, Inc. against its insurer. The adversary proceeding seeks declaratory relief determining the parties' rights and liabilities under state law arising from an insurance contract the insurer and GACN entered into prepetition. The insurer appeals from the bankruptcy court's order denying the insurer's motion for mandatory or permissive abstention.

Our decision in this appeal largely turns on the answer to the following question: for purposes of determining whether GACN's declaratory relief action is a "core" bankruptcy proceeding, is the action so "inextricably connected" to the debtor-in-possession's efforts to administer its bankruptcy estate that the action can be said to "arise in" a case under title 11 and also can be said to fall within the scope of one or both "catchall" provisions identifying core bankruptcy proceedings set forth in 28 U.S.C. § 157(b)(2)(A) and (O)?

Pursuant to controlling Ninth Circuit authority, the answer to this question is no. The declaratory relief action is not a core bankruptcy proceeding. The bankruptcy court's decision to the contrary is erroneous. The bankruptcy court also erred when it determined – for mandatory abstention purposes – that the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

declaratory relief action presented questions of both state law and federal law. For purposes of mandatory abstention, the action only presented questions of state law. Therefore, we REVERSE the bankruptcy court's determinations that the declaratory relief action was a core proceeding and that it raised both questions of state law and federal law. As a result, we must VACATE the bankruptcy court's denial of the insurer's request for mandatory abstention, and we REMAND the matter for further proceedings.

The bankruptcy court's discretionary abstention ruling also was based on the same error regarding the core versus noncore nature of the declaratory relief action. Additionally, the bankruptcy court erroneously concluded that bankruptcy law issues predominated over state law issues. Consequently, we also must VACATE and REMAND the bankruptcy court's discretionary abstention ruling.

**FACTS**

The insurer has conceded that most of the relevant facts are undisputed, so we rely heavily on the facts as stated by the bankruptcy court in its thorough and carefully-reasoned decision.

GACN owns and operates a family restaurant in the San Fernando Valley. Before GACN filed bankruptcy, certain of its former employees successfully sued GACN in the Los Angeles County Superior Court for wrongful termination, resulting in a judgment in favor of its former employees. The judgment included a $1.6 million compensatory damages award and $4 million punitive damages award.

The wrongful termination judgment spurred further court

3

activity. In August 2014, GACN commenced its chapter 11 bankruptcy case, and in February 2015, GACN filed a complaint (postpetition) in the Los Angeles County Superior Court against the insurer and against the legal counsel the insurer had hired and paid to defend GACN in the wrongful termination lawsuit. In the complaint, GACN alleged that the insurer and the defense counsel had wrongfully and unreasonably failed to settle with the wrongful termination plaintiffs even though the insurer and defense counsel knew that the wrongful termination plaintiffs had offered to settle for the $1 million policy limit and also knew that there was a likelihood that the wrongful termination lawsuit ultimately would cost far more than the policy limit.

Meanwhile, in GACN's bankruptcy case, the wrongful termination plaintiffs filed proofs of claim in an aggregate amount exceeding $11 million. GACN (acting as debtor in possession) negotiated a settlement with the wrongful termination plaintiffs, subject to bankruptcy court approval and also subject to the insurer's approval. The portion of the settlement agreement dealing with insurer approval provided:

> 3. This Agreement is further conditioned upon its approval by Lloyd's, or upon a court order which provides that Lloyd's approval is not required (the "Lloyds Determination"). Alternatively, the Lloyds Determination may, upon consent of the Parties to this Agreement, be satisfied by entry of the Confirmation Order.

Settlement Agreement (April 17, 2015) at p. 4.

As for its substantive terms, the settlement agreement provided in relevant part for three installment payments of $150,000 each to be paid by GACN principal George Metsos. The settlement agreement further provided for the assignment of a

4

portion of any litigation proceeds recovered on account of GACN's state court complaint against the insurer and defense counsel.

GACN then asked the insurer for its consent to the settlement, but the insurer rejected that request. In essence, the insurer asserted that the insurance contract required the insurer's **prior** consent before GACN could negotiate or enter into any settlement and that GACN's postpetition conduct in negotiating and settling with the wrongful termination plaintiffs violated the insurance contract.

The insurer thereafter filed an answer to GACN's state court complaint. The answer included an affirmative defense in which the insurer asserted that GACN's postpetition interactions with the wrongful termination plaintiffs barred GACN from any recovery on its state court complaint. The sixth affirmative defense specifically provided as follows:

> Plaintiff's Complaint and each purported cause of action alleged therein against [insurer] is limited or barred by operation of Policy Section X.B., which provides that "No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expenses without our consent. Subsequent payments which are deemed by us as having been prejudiced by any such voluntary payment will also be the sole responsibility of the Insured." Plaintiff has revealed that, despite Policy Section X.B., it unilaterally negotiated a fully executed settlement agreement with the underlying claimants, and Plaintiff did not seek or obtain [insurer's] prior consent.

Answer (July 22, 2015) at pp. 3-4.

In turn, GACN filed the underlying adversary proceeding in the bankruptcy court naming the insurer as the defendant and seeking declaratory relief. In summary, GACN sought a judicial determination of the parties' rights and liabilities arising from: (1) its postpetition negotiation of the conditional

5

settlement; (2) the insurer's rejection of GACN's request for its approval of the settlement; and (3) Section X.B. of the insurance contract. GACN's adversary complaint described the dispute in the following manner:

> 22. There now exists an actual controversy with respect to the rights and obligations of the parties under the Policy. Specifically, the Policy provides Underwriters with certain rights and obligations concerning its prior consent to any proposed settlement, the nature and extent of which are in controversy. GACN has requested Underwriters' consent to proceed with the proposed settlement with GACN's Judgment Creditors, as doing so is in GACN's best interests and will prevent further avoidable damages to GACN. But Underwriters have unreasonably and in bad faith failed and refused to provide such consent. By its actions and inactions, Underwriters contends that proceeding with the settlement will adversely affect GACN's rights under the Policy. GACN contends that proceeding with the settlement should not result in any adverse effect on the Policy or GACN's rights under the Policy, and that Underwriters in good faith should consent to the proposed settlement.

Complaint for Declaratory Relief (Aug. 20, 2015) at p. 6.

The insurer moved the bankruptcy court to abstain from hearing GACN's declaratory relief action based on either mandatory abstention or discretionary abstention. After full briefing and a hearing, the bankruptcy court issued its ruling. The bankruptcy court held that four of the seven requirements for mandatory abstention were met. The bankruptcy court recognized that, by way of the insurer's sixth affirmative defense in GACN's pending state court action, that action included the same subject matter as GACN's declaratory relief adversary proceeding. Also, there was no non-bankruptcy basis for federal court jurisdiction, the state court presiding over the action had jurisdiction, and the insurer's abstention motion was timely.

On the other hand, the bankruptcy court held that mandatory

6

abstention did not apply because three of the prerequisites were not met. According to the bankruptcy court, the state court could not timely adjudicate the issues raised by the declaratory relief action, those issues were not purely state law issues, and the declaratory relief action was a core proceeding.

The bankruptcy court also denied the insurer's request for discretionary abstention. After reciting all twelve of the factors bankruptcy courts typically consider in deciding a discretionary abstention request, the bankruptcy court specifically discussed many of these factors, and its position on the remaining factors is not in doubt. The entirety of the decision makes clear what the court thought about all of the discretionary abstention factors. On the whole, the bankruptcy court explained, the adversary proceeding would require the court to determine whether GACN's postpetition efforts to administer its own bankruptcy case (by attempting to fix, compose and extend the prepetition debt it owed to the wrongful termination plaintiffs) somehow ran afoul of its prepetition contract with the insurer. Because the critical and essential reorganization task of formulating a viable plan of reorganization was being impeded by the unresolved adversary proceeding issues and because GACN's ability to successfully reorganize was threatened by this impediment, the bankruptcy court concluded that exercising its discretion to abstain in this instance "would conflict with fundamental bankruptcy policy."

On December 1, 2015, the bankruptcy entered is order denying the insurer's abstention motion, and the insurer timely appealed.

7

**JURISDICTION**

The bankruptcy court's jurisdiction is discussed below. With respect to our jurisdiction, a motions panel of this court previously determined that an order denying abstention is a final order for appeal purposes, citing Krasnoff v. Marshack (In re General Carriers Corp.), 258 B.R. 181, 186-87 (9th Cir. BAP 2001).[2] However, on further reflection, we disagree with this conclusion of the motions panel. We are not bound by its decision. See Couch v. Telescope Inc., 611 F.3d 629, 632 (9th Cir. 2010); Stagecoach Utils., Inc. v. Cty. of Lyon (In re Stagecoach Utils., Inc.), 86 B.R. 229, 230 (9th Cir. BAP 1988).

We have taken a closer look at In re General Carriers Corp.. We held there that the order denying abstention at issue therein should be treated as final and immediately appealable under the collateral order doctrine. Id. at 187. Under that doctrine, certain orders that do not end the litigation are nonetheless treated as immediately appealable if they: "(1) determine conclusively the disputed issue that is completely separable from the merits of the action; (2) effectively would be unreviewable on appeal from a final judgment; and (3) are too important to be denied review." Id. at 186-87. The General Carriers court held that the abstention order on appeal satisfied all three criteria.

---

[2] The motions panel also relied on In re Bankruptcy Petition Preparers Who Are Not Certified Pursuant to Requirements of Arizona Supreme Court, 307 B.R. 134, 140 (9th Cir. BAP 2004). But that decision is inapposite. It did not involve an appeal from an order denying abstention. Rather, the Panel there construed the order on appeal as an order **granting** abstention, the finality of which is not at issue in the appeal currently before us. See id.

In relevant part, General Carriers explained that the abstention motion had been filed as a stand-alone motion. Id. at 185. In other words, no adversary proceeding had been commenced or was pending. Id. As a result, the order on appeal satisfied the second collateral order doctrine requirement of being effectively unreviewable on appeal from a final judgment or order, because there was no pending adversary proceeding to finally resolve. Id. at 187.

The matter currently before this Panel is distinguishable. Here, there is a pending adversary proceeding, and the insurer could seek review of the abstention order upon the final resolution of that adversary proceeding. Thus, the collateral order doctrine does not apply in this instance.

The General Carriers court alternately held that the order on appeal satisfied the flexible finality standard generally applicable in bankruptcy cases. The flexible finality standard treats a covered bankruptcy court order as final if the order: "'1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed.'" Id. at 186 (quoting Elliott v. Four Seasons Props. (In re Frontier Props.), 979 F.2d 1358, 1363 (9th Cir. 1992)).

This aspect of General Carriers also is distinguishable from this case. In General Carriers, the Panel considered an order entered in the main bankruptcy case; here, however, we are dealing with an order entered in an adversary proceeding, and the flexible finality standard does not apply in adversary proceedings. Belli v. Temkin (In re Belli), 268 B.R. 851 (9th Cir. BAP 2001). Instead, for purposes of determining the

9

finality of an adversary proceeding judgment or order, bankruptcy courts rely upon the same finality standard that applies in all other federal civil cases. That standard treats a judgment or order as final for appeal purposes only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945); see also Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.), 935 F.2d 1071, 1075 (9th Cir. 1991) (holding that finality defect of order denying motion to abstain was "cured" by subsequent entry of final order disposing of the merits of the entire adversary proceeding). The order denying abstention at issue herein did not meet the general federal civil finality standard, so it was interlocutory and not final.

Unless we grant leave to appeal, this interlocutory appeal from the bankruptcy court's order denying abstention is subject to dismissal for lack of jurisdiction. Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010). We typically grant leave to appeal when "refusal would result in wasted litigation and expense, the appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal would materially advance the ultimate termination of the litigation." Official Comm. of Unsecured Creditors v. Credit Lyonnais Bank Nederland, N.V. (In re NSB Film Corp.), 167 B.R. 176, 180 (9th Cir. BAP 1994).

We hold that this standard is met here. The appeal involves a controlling question of law regarding what constitutes a core proceeding, which still is a somewhat unsettled area of law. And

10

our resolution of this question now very well might prevent wasted litigation and expense and also might materially expedite the ultimate termination of this litigation. Accordingly, we grant the insurer leave to pursue this interlocutory appeal, and we will turn our attention to the merits.

**ISSUES**

1. Did the bankruptcy court err when it denied the insurer's mandatory abstention request?

2. Did the bankruptcy court err when it denied the insurer's discretionary abstention request?

**STANDARDS OF REVIEW**

We review de novo orders regarding mandatory abstention, and we review for an abuse of discretion orders regarding permissive abstention. Bethlahmy v. Kuhlman (In re ACI–HDT Supply Co.), 205 B.R. 231, 234 (9th Cir. BAP 1997).

The bankruptcy court abuses its discretion if it applies an incorrect legal rule or its findings of fact are illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

**1. Overview of Bankruptcy Court Jurisdiction**

In large part, our resolution of this appeal hinges on our review of the bankruptcy court's determination that the declaratory relief action was a "core" bankruptcy proceeding rather than a "noncore" proceeding. To facilitate our discussion of this issue, we first strive to place the core versus noncore distinction in context.

Bankruptcy court jurisdiction is statutorily based. Under

11

28 U.S.C. § 1334(a), federal district courts have "original and exclusive jurisdiction" over all title 11 cases (i.e., the bankruptcy case itself). Under 28 U.S.C. § 1334(b), district courts have "original but not exclusive jurisdiction" over "all civil proceedings **arising under** title 11, or **arising in** or **related to** cases under title 11." (Emphasis added.)

In turn, 28 U.S.C. § 157 specifies how district courts can share their bankruptcy jurisdiction with the bankruptcy courts. In accordance with the referral process authorized in 28 U.S.C. § 157(a), virtually all federal district courts have "referred" to the bankruptcy courts all of those matters over which the district courts hold bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334.

The terms "arising under title 11" and "arising in a case under title 11" are terms of art which the courts have defined. Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1285 (9th Cir. 2013). A proceeding "arises under" title 11 if it presents claims for relief created or controlled by title 11. Id. In contrast, the claims for relief in a proceeding "arising in" a title 11 case are not explicitly created or controlled by title 11, but such claims nonetheless would have no existence outside of a bankruptcy case. Id.

The remaining category of bankruptcy jurisdiction, "related to" jurisdiction, is an exceptionally broad category encompassing virtually any matter either directly or indirectly related to the bankruptcy case. Id. at 1287.

12

**2. Core Versus Noncore Distinction - Generally**

The above-referenced jurisdictional scheme is the product of Congress' 1984 amendments to the Bankruptcy Code. Congress enacted this new jurisdictional scheme to address and resolve the constitutional issues identified by the Supreme Court in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). The 1984 revisions, in relevant part, created two broad categories of proceedings potentially subject to bankruptcy court jurisdiction: "core" bankruptcy proceedings and "noncore" proceedings. Marshall v. Stern (In re Marshall), 600 F.3d 1037, 1052-54 (9th Cir. 2010), aff'd, 564 U.S. 462 (2011).

Core proceedings consist of all actions "arising under" title 11 and also those "arising in" a case under title 11. Id. at 1053. 28 U.S.C. § 157(b)(2) contains a non-exhaustive list of core bankruptcy proceedings. Id. at 1053-54. Included in that list are a number of provisions identifying specific types of bankruptcy court proceedings that qualify as core and two catchall provisions that bookend the more-specific provisions. The first catchall provision, 28 U.S.C. § 157(b)(2)(A), designates as core "matters concerning the administration of the estate" and the second catchall provision, 28 U.S.C. § 157(b)(2)(O), designates as core "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."

Congress specified that bankruptcy judges could render final, appealable rulings in core bankruptcy proceedings. 28 U.S.C. § 157(b)(1); In re Marshall, 600 F.3d at 1053-54.

13

Congress further specified that bankruptcy judges could render final, appealable rulings in noncore proceedings, but only with the parties' consent (in order to avoid <u>Marathon</u>-like constitutional problems). <u>Id.</u> (citing 28 U.S.C. § 157(c)).

**3. Core Versus Noncore Distinction & Abstention Factors**

The core versus noncore distinction affects other aspects of bankruptcy court jurisprudence besides whether the bankruptcy court can enter final, appealable rulings. In relevant part, the distinction plays a significant role in the bankruptcy court's decision whether to grant or deny an abstention motion. Whether an action is a core or a noncore proceeding is a factor to be considered in making both mandatory and permissive abstention rulings. <u>See</u> 28 U.S.C. § 1334(c)(1), (2); <u>see also</u> <u>In re Eastport Assocs.</u>, 935 F.2d at 1075-76 (identifying permissive abstention factors).

The bankruptcy court correctly recited the applicable legal standards for determining both mandatory and permissive abstention requests. Neither party on appeal has challenged those standards. Rather, the parties' arguments on appeal focus on whether the undisputed facts presented herein satisfy these factors. As the bankruptcy court noted, mandatory abstention requires:

> (1) A timely motion; (2) a purely state law question; (3) a non-core proceeding § 157(c)(1); (4) a lack of independent federal jurisdiction absent the petition under title 11; (5) that an action is commenced in a state court; (6) the state court action may be timely adjudicated; (7) a state forum of appropriate jurisdiction exists.

Order Denying Abstention (Dec. 1, 2015) at p. 9 (citing <u>In re General Carriers Corp.</u>, 258 B.R. at 189).

14

With respect to permissive abstention, the bankruptcy court pointed out that courts consider the following twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Id. at 9-10 (citing Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1167 (9th Cir. 1990)).

**4. Review of Bankruptcy Court's Determination of Core Status**

While the parties and the bankruptcy court canvassed the law from both the Ninth Circuit and other circuits, there is ample Ninth Circuit law on point sufficient to answer the question of whether GACN's declaratory relief adversary proceeding qualifies as a core proceeding.

Four Court of Appeals cases inform our analysis. Battle Ground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124 (9th Cir. 2010); Harris v. Wittman (In re Harris), 590 F.3d 730 (9th Cir. 2009); Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431 (9th Cir. 1995); Piombo Corp. v. Castlerock Props. (In re Castlerock Props.), 781 F.2d 159 (9th Cir. 1986).

In re Castlerock Props. (the earliest of these four

15

decisions) articulated the Ninth Circuit's general rule regarding whether state law contract claims qualify as core or noncore proceedings: "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are [noncore] proceedings . . . even if they arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O)." In re Castlerock Props., 781 F.2d at 162. The Ninth Circuit adopted this narrow interpretation of the catchall provisions in deference to Marathon and in order to avoid a reprise of the constitutional problems Marathon grappled with. See In re Harris, 590 F.3d at 740 (identifying the impetus for In re Castlerock Prop.'s holding).

Whereas In re Castlerock Props. involved a prepetition contract claim, In re Harris Pine Mills (the second oldest of the four decisions) involved postpetition tort claims allegedly arising from the bankruptcy trustee's exercise of his statutory duty to administer bankruptcy estate assets: specifically, the bankruptcy-court-approved sale of those assets. In re Harris Pine Mills, 44 F.3d at 1434. In re Harris Pine Mills held that the postpetition state law tort claims asserted against the bankruptcy trustee and his agents were based on conduct "inextricably intertwined" with the trustee's sale of estate property and, therefore, that those claims constituted core proceedings that fell within the scope of 28 U.S.C. § 157(b)(2)'s catchall provisions. Id. at 1438.

In re Harris (the third oldest of these four decisions) effectively extended In re Harris Pine Mills' holding to

16

postpetition contract claims. In re Harris analyzed at length both In re Castlerock Props. and In re Harris Pine Mills. In the process, In re Harris made some important statements about "arising in" jurisdiction and about when 28 U.S.C. § 157(b)(2)'s catchall provisions apply to contract actions. For instance, In re Harris stated that, "[b]ecause the plaintiff sued the bankruptcy trustee for the trustee's conduct in administering the bankruptcy estate, the state law claims **arose in** the bankruptcy case and were subject to federal jurisdiction." In re Harris, 590 F.3d at 738 (emphasis added). In so stating, In re Harris further explained that "an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not" exist independent of a bankruptcy case. Id. at 737.

Moreover, in deciding that In re Harris Pine Mills was controlling, In re Harris noted that the causes of action in both cases arose "from the trustee's post-petition conduct pursuant to the trustee's duty to administer the bankruptcy estate." Id. at 739. Therefore, In re Harris reasoned, the breach of contract action before it, just like the tort action before In re Harris Pine Mills, qualified as a core proceeding under 28 U.S.C. § 157(b)(2)(A), because the action "was inextricably intertwined with the sale of estate assets - the literal administration of the bankruptcy estate." Id.

In re Harris made some similarly expansive statements regarding the basis for core jurisdiction in the process of determining that In re Castlerock Props. did not control the outcome of Harris' appeal. First, as a preliminary matter, In re Harris noted that In re Castlerock Props. did not entirely

17

eliminate the catchall provisions of 28 U.S.C. § 157(b)(2)(A) and (O), but rather merely limited their application "under principles of constitutional avoidance." Id. at 740. And second, In re Harris held that Harris' action against the bankruptcy trustee fell within the scope of In re Castlerock Props.'s narrow construction of the catchall provisions. In so holding, In re Harris explained as follows:

> Harris's claim does not just "relate" to the administration of the estate, **his suit necessarily involves how the bankruptcy estate was administered**. This is not like the pre-petition contract suits in Castlerock and Marathon that only arguably related to the administration of the estate because one of the parties to the contract was in bankruptcy. **Harris's breach of contract claim arose from the administration of his bankruptcy estate. Castlerock, like Marathon, involved breach of contract claims that arose before and independent of the administration of bankruptcy assets.**

Id. at 740 (citations omitted and emphasis added).

If our analysis of the above-referenced Ninth Circuit decisions ended there, we likely could and would conclude under In re Harris that GACN's declaratory relief action "arose in" GACN's bankruptcy case and was a "core" proceeding under both 28 U.S.C. § 157(b)(2)(A) and (O). By way of its declaratory relief action, GACN sought to determine whether, as contended by the insurer, GACN had breached its obligations under the insurance contract as a result of its postpetition efforts to administer its bankruptcy estate and move toward a viable plan of reorganization (by negotiating a settlement fixing, composing and extending its indebtedness to the wrongful termination plaintiffs).

Thus, GACN's declaratory relief action, similar to the

18

lawsuit in In re Harris, arose from the debtor-in-possession's "post-petition conduct pursuant to [its] duty to administer the bankruptcy estate," was "inextricably intertwined with the . . . the literal administration of the bankruptcy estate" and "necessarily involve[d] how the bankruptcy estate was administered." Id. In addition, GACN's declaratory relief action was unlike the state law claims at issue in Castlerock and Marathon, which "involved breach of contract claims that arose before and independent of the administration of bankruptcy assets." Id.

But our analysis of the Ninth Circuit decisions does not end there. In re Harris also expressed a concern indicating that bankruptcy courts must take care not to include within the definition of core proceedings "traditional" prepetition contract actions like the one at issue in Marathon. Id. at 741. According to In re Harris, the Marathon concern was not implicated by Harris' lawsuit because the underlying contract was entered into postpetition, was approved by the bankruptcy court, directly related only to estate administration and involved as parties the trustee and the estate's Special Representative. Id.

None of the types of facts that satisfied In re Harris's Marathon concern are present here. The insurance contract was entered into prepetition between the insurer and GACN – before GACN became a debtor in possession – and the insurance contract never was the subject of bankruptcy court approval. It also is relevant that, here, the debtor in possession – GACN – commenced the adversary proceeding against the insurer, rather than the other way around. This further distinguishes the matter

19

currently before us from In re Harris, in which Harris filed the subject action against the bankruptcy trustee. Some of the above-quoted language from In re Harris suggests that this distinction is significant. See, e.g., id. at 737 (holding that "an action **against** a bankruptcy trustee for the trustee's administration of the bankruptcy estate" is a core proceeding arising in a title 11 case); see also Schultze v. Chandler, 765 F.3d 945, 948-50 (9th Cir. 2014) (explaining why actions against estate professionals routinely are considered core proceedings and further stating that "courts have been less concerned with the identity of the party bringing the claim and more concerned with the identity and function of the party against whom the claim is brought").

In short, In re Harris suggested that an adversary proceeding **by** the trustee or debtor in possession on a **prepetition** contract might not escape Marathon's constitutional concerns (and hence should not be determined to be within the scope of 28 U.S.C. § 157(b)(2)(A) or (O)), even if that adversary proceeding involved claims for relief based on the trustee's – or the debtor in possession's – postpetition conduct undertaken to administer the bankruptcy estate.

What In re Harris suggested, In re Ray largely confirms. In In re Ray (the newest of the four Ninth Circuit decisions referenced above), the reorganized debtor (Ray), in furtherance of his confirmed chapter 11 plan, sought and obtained bankruptcy court approval to sell an undeveloped half-acre parcel of real property adjacent to the shopping mall the debtor co-owned with a third party. In re Ray, 624 F.3d at 1128-29. The prospective

20

buyer of the shopping mall (Battle Ground Plaza, LLC) objected to the sale of the half-acre parcel because, under the terms of the parties' prepetition contract for the sale of the shopping mall, Battle Ground Plaza held a right of first refusal to purchase the half-acre parcel. Id. The bankruptcy court approved the sale of the half-acre parcel over Battle Ground Plaza's objection. Id.

Later on, Battle Ground Plaza filed a state court lawsuit against Ray and others alleging, among other things, that Ray had breached his contractual duty to honor the right of first refusal by selling the half-acre parcel to someone other than Battle Ground Plaza. Id. The state court "remanded" the lawsuit to the bankruptcy court, and the bankruptcy court ultimately entered a final decision on the merits denying any relief on Battle Ground Plaza's prepetition contract claim. Id.

On appeal, the Ninth Circuit held that the bankruptcy court lacked jurisdiction to hear and decide the merits of Battle Ground Plaza's lawsuit. Id. at 1131-35. According to In re Ray, the lawsuit did not arise under title 11, did not arise in a case under title 11, and was not even related to a case under title 11. Id. at 33. Nor did the bankruptcy court have ancillary jurisdiction over the lawsuit. Id. at 1135-36.

The only aspects of In re Ray relevant here concern its determination that the bankruptcy court lacked "arising in" jurisdiction and its analysis of In re Harris. According to In re Ray, following the reasoning of In re Harris, Battle Ground Plaza's lawsuit did not "arise in" a case under title 11 because the lawsuit could exist independently of Ray's bankruptcy case, so the lawsuit was not a core proceeding. Id. at 1133.

21

Undeniably, there were some potentially significant similarities between In re Harris and In re Ray. Id. In both cases, the breach of contract lawsuits directly arose from postpetition conduct specifically undertaken to further either estate administration or the consummation of a confirmed reorganization plan. Id. Based on this similarity, In re Ray arguably could have concluded (as In re Harris did) that the subject lawsuit could not have existed outside of a title 11 case. But, importantly, In re Ray did not rely on this similarity.

Instead, In re Ray focused on what it perceived to be the key distinctions in the controlling facts of both cases:

- In re Harris involved a lawsuit against the bankruptcy trustee and other estate representatives, who at all relevant times were engaged in the performance of their statutory duties as prescribed by the Bankruptcy Code, whereas In re Ray involved a lawsuit against the reorganized debtor and several non-debtor parties; and

- In re Harris involved a lawsuit for breach of a postpetition settlement agreement the trustee entered into as part of his administration of the bankruptcy estate's assets, whereas In re Ray involved a lawsuit for breach of a prepetition right of first refusal created under state law rather than as part of a bankruptcy case. Id.

Based on these distinctive facts, In re Ray concluded that Battle Ground Plaza's lawsuit did not arise in a title 11 case and was not a core proceeding. Id.

When we look at the four above-referenced Ninth Circuit

22

cases as a whole, we are persuaded that GACN's declaratory relief action against the insurer is not a core proceeding. The underlying dispute solely concerns the parties' rights and liabilities under a prepetition insurance contract, which was entered into pursuant to state law rather than as a part of a bankruptcy case. Additionally, the insurer has not attempted to assert against GACN any sort of affirmative claim for relief challenging any aspect of GACN's performance of its statutory duties as a debtor in possession or otherwise implicating core bankruptcy claims procedures.

We recognize and appreciate the major impact the declaratory relief action is having and will continue to have on GACN's bankruptcy case. It is not an exaggeration to say that GACN's prospects of a successful consensual reorganization depend upon it prevailing in that action. Nor are we disregarding the fact that the insurer's litigation position (that GACN forfeited it rights under the insurance contract by negotiating a postpetition settlement with the wrongful termination plaintiffs) challenges GACN's conduct as debtor in possession in administering the bankruptcy estate and impedes GACN from making further progress towards confirming a consensual chapter 11 plan.

The catch is that none of these facts translate into core bankruptcy jurisdiction. The criteria for core jurisdiction, set forth above, as established by Congress in response to Marathon, have been strictly construed by the Ninth Circuit in order to avoid a future Marathon-like constitutional problem. The facts of this case simply do not satisfy the Ninth Circuit's strict standards for core jurisdiction.

23

Thus, the bankruptcy court erred when it held that GACN's declaratory relief action qualified as a core bankruptcy proceeding.

**5.  Review of Bankruptcy Court's Determination That Other Mandatory Abstention Elements Were Not Satisfied**

Even though we have decided that GACN's declaratory relief action was a noncore proceeding, this does not by itself establish that the bankruptcy court incorrectly denied mandatory abstention.  To support its mandatory abstention denial, the bankruptcy court also determined that two other mandatory abstention prerequisites were not met.  According to the bankruptcy court, GACN's adversary proceeding did not present purely state law questions.  Additionally, the bankruptcy court found that the state court could not timely adjudicate the dispute.  We will address each of these determinations in order.

With respect to the questions raised by the declaratory relief action, we disagree with the bankruptcy court's determination that the action raised both state law questions and bankruptcy law questions.  This abstention element requires bankruptcy courts to look at the parties' claims for relief in order to ascertain whether state law or federal law governs those claims.  See, e.g., Bowen Corp. v. Sec. Pac. Bank Idaho, F.S.B., 150 B.R. 777, 782 (Bankr. D. Idaho 1993); World Solar Corp. v. Steinbaum (In re World Solar Corp.), 81 B.R. 603, 607 (Bankr. S.D. Cal. 1988).  Bowen Corp.'s and In re World Solar Corp.'s analyses of this mandatory abstention element are consistent with the language of the statute, which focuses on whether the subject proceeding involves "State law claim[s] or State law cause[s] of

24

action." 28 U.S.C. § 1334(c)(2).

On its face, GACN's complaint only asks for a determination of the parties' rights and liabilities under the insurance contract, which is wholly governed by state law. The bankruptcy court posited that bankruptcy law questions might arise because the action will affect GACN's rights and duties as a debtor in possession and also might impair GACN's ability to obtain bankruptcy court approval under Rule 9019 of its settlement with the wrongful termination plaintiffs. The bankruptcy court's reasoning conflates the potential impact of the action with the law governing the action. We recognize that General Carriers Corps.'s articulation of this element referenced state law "questions" rather than state law "claims for relief." 258 B.R. at 189. But we do not read General Carriers Corp. as attempting to depart from the statutory language or as attempting to change the plain meaning of that language. For mandatory abstention purposes, we hold that GACN's adversary proceeding only presented questions of state law.

As for the issue of whether the state court could timely adjudicate the dispute, the bankruptcy court here answered a slightly different question: who could resolve the dispute faster – the bankruptcy court or the state court. While the bankruptcy court's question frequently is relevant to the timeliness determination, it is not always controlling. The most important considerations in making the timeliness determination are the circumstances surrounding the bankruptcy case and the urgency of resolving the dispute presented by those circumstances. In re World Solar Corp., 81 B.R. at 612. As In re World Solar Corp.

25

indicated, the greater the urgency in resolving the dispute for bankruptcy purposes, the less of a delay in the state court the bankruptcy court should allow for before determining that the state court cannot timely adjudicate the dispute.

Here, the record indicated that GACN's need to resolve the dispute underlying the declaratory relief action was relatively urgent because the pendency of the dispute was impeding GACN's reorganization efforts. The record also suggested that a number of months would elapse before the state court could address the dispute either by trial or summary judgment. These factors tend to support the bankruptcy court's timeliness determination.

On the other hand, because the bankruptcy court erroneously concluded that the dispute was a core proceeding, the bankruptcy court's timeliness calculation necessarily was off. When, as here, the dispute is a noncore proceeding, and one of the parties has not consented to the bankruptcy court entering a final decision pursuant to 28 U.S.C. § 157(c)(2), the bankruptcy court cannot itself enter a final decision, but rather must submit proposed findings of fact and conclusions of law to the district court, which only can enter a final decision after considering the bankruptcy court's proposed findings and conclusions and after reviewing de novo any matter a party has timely and specifically objected to. 28 U.S.C. § 157(c)(1).

When the 28 U.S.C. § 157(c)(1) district court review process is factored into the timeliness equation, the bankruptcy court might conclude that GACN could obtain a more timely resolution of the issues underlying the declaratory relief action by seeking from the state court summary adjudication of the insurer's sixth

26

affirmative defense in the state court action. See generally See's Candy Shops, Inc. v. Sup. Ct., 210 Cal. App. 4th 889, 899-900 (2012) (indicating that summary adjudication procedures are available to dispose of individual affirmative defenses).

Our collective experience as bankruptcy judges indicates that the length of time it takes district courts to complete the review process under 28 U.S.C. § 157(c)(1) varies widely from court to court and district to district. We have no personal knowledge of how long this process might take in the Central District of California on a matter requiring the interpretation of an insurance contract provision.

Therefore, remand is necessary so that the bankruptcy court can revisit the timeliness issue.

**6. Decision re Bankruptcy Court's Denial of Mandatory Abstention**

In sum, we will VACATE and REMAND the bankruptcy court's denial of the insurer's request for mandatory abstention, so that the bankruptcy court can factor into its timeliness consideration 28 U.S.C. § 157(c)(1)'s district court review process for noncore matters. On remand, the bankruptcy court also can consider the other aspects of the timeliness issue we have alluded to, above, and it may reopen the record on this issue if it deems it necessary or desirable.

However, based on our analysis set forth above, we must overturn the bankruptcy court's ruling that GACN's declaratory relief action is a core proceeding and its ruling that the action raises both questions of state law and questions of bankruptcy law for mandatory abstention purposes. We REVERSE these rulings. Consequently, the resolution on remand of the insurer's mandatory

27

abstention request depends solely on the bankruptcy court's resolution of the timeliness issue. If the bankruptcy court, on remand, decides the timeliness issue in favor of the insurer, it should grant the mandatory abstention request, but if it decides the timeliness issue in favor of GACN, it should deny the mandatory abstention request.

**7.  Discretionary Abstention**

Generally speaking, the bankruptcy court's discretionary abstention analysis is persuasive. The bankruptcy court cogently reasoned that the huge impact the resolution of the declaratory relief action would have on the administration of GACN's bankruptcy estate and on GACN's prospects of proposing a viable consensual plan of reorganization militated strongly against discretionary abstention, citing Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1021 (9th Cir. 2012). In essence, the bankruptcy court held that this factor outweighed any factors that arguably might weigh in favor of discretionary abstention.

That being said, the bankruptcy court's errors regarding the presence of a core proceeding and regarding the predominance of bankruptcy law issues over state law issues infected the bankruptcy court's discretionary abstention analysis. Both the noncore status of the declaratory relief action and the predominance of state law issues therein are relevant to several of the discretionary abstention factors. Because these factors might be weighed differently if the noncore status of the action and the predominance of state law issues are accounted for, we conclude that the errors were not harmless to the bankruptcy

28

court's denial of discretionary abstention and that the denial under these circumstances constituted an abuse of discretion.

Accordingly, we will VACATE and REMAND the bankruptcy court's denial of the insurer's request for discretionary abstention so that the bankruptcy court can account for the noncore status of the declaratory relief action and for the predominance of state law issues therein.

## CONCLUSION

In closing, we acknowledge that our decision, following Ninth Circuit law, adheres to a formulaic standard for determining core jurisdiction – a standard that can lead to seemingly arbitrary results offering little or no relief from the real-life litigation obstacles debtors encounter, and which can seriously threaten the foundational Bankruptcy Code objectives to provide debtors with a fresh start and creditors with a ratable distribution from available assets. Then again, this formulaic standard necessarily flows from the Supreme Court's Marathon decision and Congress' post-Marathon amendments to the Bankruptcy Code's jurisdictional scheme. Neither the Ninth Circuit nor this Panel are writing on a clean slate. We are bound by both Marathon's pronouncements and Congress' jurisdictional scheme.

For the reasons set forth above, we REVERSE in part, and we VACATE and REMAND in part.