

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HEARTWISE, INC.,<br>　　　　　　Debtor. | BAP No. CC-22-1089-LSG<br><br>Bk. No. 8:20-bk-13335-SC |
| VITAMINS ONLINE, INC.,<br>　　　　　Appellant,<br>v.<br>HEARTWISE, INC.; UNITED STATES<br>TRUSTEE; MAGLEBY, CATAXINOS &<br>GREENWOOD, PC,<br>　　　　　　Appellees. | **MEMORANDUM\*** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Prepetition, creditor Vitamins Online, Inc. ("VOL") obtained a

judgment (the "Judgment") against HeartWise, Inc. in the United States

District Court for the District of Utah ("District Court"). HeartWise

appealed the Judgment. VOL was represented for a time in that litigation

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

by Magleby, Cataxinos & Greenwood, P.C. ("MCG"). The engagement agreement between VOL and MCG provided that any judgment awarded would be paid to MCG, which would deduct its fees and distribute the balance to VOL. After HeartWise filed its chapter 11[1] case, VOL and MCG each filed proofs of claim for the full Judgment amount, and each objected to the other's claim. Thereafter, the bankruptcy court confirmed HeartWise's plan of reorganization, which provided that HeartWise would deposit into the court registry funds sufficient to satisfy the Judgment but that no distribution would be made on either claim until the appeal of the Judgment and the claim dispute were both resolved.

Post-confirmation, the bankruptcy court sustained MCG's objection and overruled VOL's, finding that the engagement agreement created a power coupled with an interest entitling MCG to collect the Judgment. After a new judge was assigned to the case, the bankruptcy court granted VOL's motion for reconsideration. The court vacated the orders sustaining MCG's objection and overruling VOL's, but it abstained from deciding the dispute, concluding that its resolution would have no impact on the estate and that Utah courts were better suited to interpret the engagement agreement.

We AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure.

# FACTS

## A.    Pre-Petition Events

HeartWise and VOL are both engaged in the business of selling vitamins and nutritional supplements online. In 2013, VOL sued HeartWise in the District Court, alleging claims for unfair competition and false advertising under federal and state law (the "District Court Action"). About five years into the litigation, VOL hired MCG to replace its existing counsel in the District Court Action. VOL and MCG executed an engagement agreement, which provided for a combination of reduced hourly fees and a contingency fee. The engagement agreement provides, in relevant part:

> Client agrees to pay [MCG] the contingency fee at the time of recovery. That is, it is the intent of the parties that both Client and the Firm shall be paid at the same time, as any recovery is obtained. . . . All payments from or collected against HeartWise or associated persons or entities shall be directed to [MCG], which will deduct the contingency fee and any outstanding fees and costs, and then pay the balance to Client. . . .

In November 2020, the District Court awarded VOL $9,551,232 in damages against HeartWise plus prejudgment interest and attorneys' fees, for an estimated total of $14.5 million. The Judgment provides that attorneys' fees will be determined post-judgment. HeartWise appealed the Judgment, and VOL filed a cross-appeal, arguing that it should have been awarded an additional $34 million. The appeal and cross-appeal remain

pending at the Tenth Circuit Court of Appeals.[2] Almost immediately after the Judgment was awarded, VOL terminated MCG's representation.

## B.    Bankruptcy Events

HeartWise filed a chapter 11 bankruptcy petition on December 4, 2020. VOL and MCG each filed proofs of claim for $14.5 million based on the Judgment (claim numbers 3-2 and 5-2, respectively). MCG's proof of claim was based on the engagement agreement, which MCG asserted entitled it to receive payment of the Judgment (and any further amounts recovered), subtract its fees and costs, and pay the remaining balance to VOL.[3]

VOL and MCG each objected to the other's claims. VOL argued that MCG was not a creditor because the Judgment was owed to VOL; MCG argued that it was entitled to payment pursuant to the engagement agreement. After a hearing, the bankruptcy court overruled VOL's objection and sustained MCG's. Although no party had raised the theory, the bankruptcy court sua sponte reasoned that, through the engagement agreement, VOL had granted MCG an irrevocable power coupled with an interest. Under that theory, the bankruptcy court found that VOL had granted MCG the power, i.e., the exclusive right, to collect the Judgment,

---

[2] According to the Tenth Circuit Court of Appeals docket, the matter was argued November 15, 2022.

[3] VOL and MCG also filed proofs of claim for $34 million (claim numbers 8 and 12-1, respectively), representing "additional amount that should have been awarded" in the District Court Action.

and the interest coupled with that power was MCG's attorneys' lien that arose by operation of Utah statutory or common law.[4] Alternatively, the bankruptcy court found that the interest "may be viewed as MCG's rights to payment of all its fees and costs under the Engagement Agreement." Based on this conclusion, the bankruptcy court found that VOL had no right to payment directly from HeartWise. The bankruptcy court entered an order disallowing VOL's claim number 3-2 (the "Disallowance Order") and an order overruling VOL's objections to MCG's claim number 5-2 (the "Objection Order").

In the meantime, the bankruptcy court confirmed HeartWise's first amended chapter 11 plan of reorganization. The confirmed plan provides for 100% payment to all creditors, plus postpetition interest. It provides that HeartWise will deposit $14.5 million into the court registry for payment of the Judgment and states that those funds will not be released "to Magleby" until all appeals of the Judgment and any subsequent proceedings have been completed. The court's findings and conclusions regarding confirmation similarly state that

> the Plan provides that the full amount of the Judgment, [plus interest and attorneys' fees] are being deposited into the Court's registry pending an outcome of the objections to Claim Nos. 3 and 5, and the appeal and cross-appeal of the Judgment.

---

[4] The bankruptcy court cited Utah Code § 38-2-7(2), which provides that an attorney obtains a lien on settlement funds for the balance of any compensation due. The bankruptcy court also cited *Montague v. McCarroll*, 49 P. 418 (Utah 1897), for the proposition that a power coupled with an interest is irrevocable.

> . . . . The Court has yet to determine which party, Magleby or Vitamins Online, will be paid the Judgment, or any portion thereof.

And the confirmation order states that the plan "provides for HeartWise to interplead approximately $14.5 million in moneys ear-marked to pay the Claim 3-2 or Claim 5-2 (depending upon how the interpleader is ultimately resolved)."

The bankruptcy case was assigned to a new judge in February 2022, following the previous judge's retirement. VOL then moved for reconsideration of the Disallowance Order. VOL argued that it had been denied due process by not being permitted to brief the power coupled with an interest theory or to be heard on the court's factual findings. It also argued that the bankruptcy court erred in disallowing its claim because (i) MCG's objection was not based on § 502(b); and (ii) the court failed to give effect to the parties' intentions in interpreting the engagement agreement. VOL further argued that the bankruptcy court erred in its interpretation of the power coupled with an interest theory as applied to the engagement agreement and, in any event, Utah law prohibits such arrangements between attorneys and their clients. Finally, it argued that MCG lacked standing.

After a hearing, the bankruptcy court granted reconsideration, concluding that the engagement agreement did not create an assignment and that MCG's right to collect did not translate into a right to payment

(i.e., a claim) directly against HeartWise. The court also noted that it was unclear from the previous bankruptcy judge's memorandum decision how the terms of the engagement agreement created an irrevocable power coupled with an interest. The bankruptcy court ordered the Disallowance Order and the Objection Order vacated, but it permissibly abstained from resolving the dispute between VOL and MCG over which entity has a right to payment from HeartWise, concluding that the dispute should be adjudicated in the District Court.

In an order denying VOL's motion for additional findings, the bankruptcy court clarified that it did not intend the following statements of fact in the order denying reconsideration to be limiting on the court that ultimately decides the dispute between VOL and MCG: (1) that the Utah District Court would decide the amount of attorneys' fees; (2) that HeartWise's appeal was pending before the Utah District Court rather than the Tenth Circuit Court of Appeals; and (3) that an action resolving the claim dispute would be adjudicated by the Utah District Court rather than the state court. The bankruptcy court also stated that to the extent any of those statements were misstatements of the record, it would retract them, noting that any such errors were minor and had no bearing on its abstention decision. The bankruptcy court also clarified that it intended that once the claims issues were resolved, the parties would file pleadings in the bankruptcy court to further the process of payment on the appropriate claim.

VOL timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in implicitly finding that MCG had standing?

Did the bankruptcy court abuse its discretion in abstaining from adjudicating the parties' rights to the funds held in the court registry?

## STANDARDS OF REVIEW

Standing is a legal issue that we review de novo. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011).

We review for abuse of discretion the bankruptcy court's order regarding permissive abstention. *Certain Underwriters at Lloyds, Syndicates 2623/623 v. GACN, Inc. (In re GACN, Inc.)*, 555 B.R. 684, 692 (9th Cir. BAP 2016). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested"; and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

8

**DISCUSSION**

It is not clear what VOL hopes to accomplish in bringing this appeal. Although VOL argues that the bankruptcy court abused its discretion in abstaining, VOL contends that the bankruptcy court erred in not deciding the claims dispute in VOL's favor, and it takes the position that it could be paid immediately should we so find. As such, VOL focuses much of its argument on the merits of the dispute. But the primary issue in this appeal is whether the bankruptcy court appropriately abstained from hearing the dispute; the merits are not before us. Oddly enough, VOL also argues that the bankruptcy court lacked subject matter jurisdiction over the dispute.

If anything, the bankruptcy court's order was favorable to VOL in that it granted VOL's motion for reconsideration, which simply put the parties back in the position they were in before the initial ruling on the claim objections, leaving them free to litigate their dispute elsewhere. VOL's appeal seems counterproductive given its complaint that the abstention ruling is delaying distribution of the Judgment proceeds. As discussed below, we see no abuse of discretion in the bankruptcy court's decision to abstain.

**A.      VOL's motion to modify the record on appeal or for judicial notice is denied.**

As a threshold matter, we address VOL's motion to modify the record on appeal, or in the alternative, its request for judicial notice with respect to several documents that were not included in its excerpts of

9

record but are all available on the bankruptcy court's docket. VOL argues that several of those documents are material to the decision in this appeal, while the remaining documents provide "undisputed background and context to the issues on appeal." VOL also contends that some of the documents are relevant to show that HeartWise advanced certain arguments in the bankruptcy court that are contrary to those asserted on appeal. HeartWise and MCG each filed objections to the motion on the ground that permitting supplementation of the record at this time would be prejudicial.

Although we have discretion to permit supplementation of the record, *see* Rule 8009,[5] we find it unnecessary to our resolution of this appeal. We note that some of the documents were included in MCG's excerpts of the record. In any event, we have discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case, and we have done so here, as appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). VOL's motion is thus DENIED.

---

[5] Rule 8009(e)(2) provides, in relevant part,

"[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected, and a supplemental record may be certified and transmitted:

. . .

(C) by the court where the appeal is pending.

**B.    MCG had standing in the bankruptcy court.**

VOL contends that the bankruptcy court should have found that MCG lacked standing to object to VOL's claim, an issue that VOL raised in its motion for reconsideration. VOL contends that MCG lacked constitutional standing, prudential standing, and statutory standing. VOL also contends that because MCG lacked standing, the bankruptcy court had no jurisdiction to determine MCG's claim objection.

But VOL's standing arguments are premised upon the notion that MCG has no valid claim in the HeartWise bankruptcy, which has yet to be determined. The vacatur of the Disallowance Order, standing alone, did not result in the disallowance of MCG's claim; the bankruptcy court explicitly abstained from that determination. Unless and until it is determined that MCG has no right to the funds being held in the court registry, it has standing.

**C.    The bankruptcy court did not abuse its discretion in permissively abstaining.**

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court may abstain from hearing a matter over which it has jurisdiction under 28 U.S.C. § 1334(a) and (b). Subsection (c)(1) of 28 U.S.C. § 1334 provides, in relevant part, "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

In determining whether permissive abstention is appropriate, courts generally consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Eastport Assocs. v. City of Los Angeles*, 935 F.2d 1071, 1075-76 (9th Cir. 1991) (quoting *Christensen v. Tucson Ests., Inc. (In re Tucson Ests., Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990) (quotations and additional citations omitted).

The bankruptcy court analyzed these factors and determined that they weighed in favor of abstention. Specifically, the court found that, because the plan has been substantially consummated, and funds have been set aside to pay whichever party is determined to be entitled to them, abstention would have no impact on the effective administration of the estate. Next, it correctly found that the dispute revolved entirely around

state law issues. The court also found that the Utah District Court was better suited to resolve the issue of who has the right to payment of the Judgment and that having the matter resolved there would alleviate the burden on the bankruptcy court to resolve a non-bankruptcy matter.

VOL argues that the bankruptcy court erred in not addressing MCG's standing. But we have rejected VOL's standing argument above. In the alternative, VOL argues that, if MCG had standing, the bankruptcy court had an "unflagging obligation" to adjudicate the dispute. It cites cases from the Supreme Court and the Ninth Circuit, which stand for the proposition that abstention is the exception, not the rule, and that abstention should be exercised only in exceptional circumstances. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013); *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959); *Ctr. For Biological Diversity v. U.S. Forest Serv.*, 925 F.3d 1041, 1050-51 (9th Cir. 2019). VOL argues that abstention will result in the parties' time and resources being wasted, but it cites no case law holding that this alone is a reason to retain jurisdiction. And their "unflagging obligation" argument makes no sense given that the plan has been confirmed, so the resolution of the dispute would have no impact on the bankruptcy estate. In fact, in VOL's reply brief, it argues that the bankruptcy court lacked subject matter jurisdiction over MCG's claim objection for this very reason.

Next, VOL argues that the bankruptcy court erred in abstaining in the absence of a parallel state court proceeding, citing *Schulman v.*

13

*California*, 237 F.3d 967, 981 (9th Cir. 2001), and *Security Farms v. International Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997).[6] Although this is a correct statement of the rule articulated in those cases, they are distinguishable. *See Moore v. Hatfield (In re Hatfield)*, No. 08-3140 TC, 2009 WL 2849538, at *2 (Bankr. N.D. Cal. 2009).

In *Hatfield*, the bankruptcy court denied reconsideration of its order abstaining from hearing an adversary proceeding that involved state law claims between non-debtor parties. In its ruling, the bankruptcy court held that the absence of a parallel state court proceeding was not fatal to its decision to abstain. *Id.* The court pointed out that the holdings of *Lazar* and *Security Farms* were based on the procedural posture of those cases—the respective state court proceedings had been removed to the bankruptcy court, thus extinguishing those proceedings. The Ninth Circuit held that, in that context, the bankruptcy court's decision whether to keep those proceedings was governed by the statutes and rules governing remand of removed proceedings, rather than by the more general provisions governing abstention. *Sec. Farms*, 124 F.3d at 1009-10.

The *Hatfield* court noted that the Ninth Circuit expressly stated in *Tucson Estates* that the pendency of another proceeding is only a factor in determining whether to remand, and in *Eastport Associates*, although no

---

[6] Although the District Court case has been closed, the Judgment provides that the final amount of attorney's fees and costs are to be determined post-judgment.

state court action was pending, "the Ninth Circuit treated that fact merely as a consideration weighing against abstention, and not as a bar against abstention." *In re Hatfield*, 2009 WL 2849538, at *2 (citing *Eastport Assoc.*, 935 F.2d at 1078).[7]

VOL also complains that bankruptcy court analyzed only three out of the twelve factors and that it assumed several facts "that it later retracted" but did not revisit its analysis. Contrary to VOL's assertion, the bankruptcy court's findings explicitly addressed the first, second, fourth, ninth, and twelfth *Tucson Estates* factors. And its other findings implicitly address most of the other factors. For example, in analyzing the Disallowance Order, the bankruptcy court concluded that it was unclear from the case law that the terms of the engagement letter vested an interest in MCG such that MCG could pursue payment against HeartWise (factor three: difficulty or unsettled nature of applicable state law). The bankruptcy court also implicitly found that the dispute was only peripherally related to the main bankruptcy case and, despite the core nature of a claims allowance proceeding, HeartWise would be entirely unaffected by the outcome of the dispute (factors six and seven: degree of relatedness or remoteness of the

---

[7] VOL also cites our unpublished decision in *Skyline Ridge, LLC v. Cinco Soldados, LLC (In re Skyline Ridge, LLC)*, BAP No. AZ-21-1108-LBS, 2022 WL 884724 (9th Cir. BAP Mar. 23, 2022), in which we relied on *Lazar* and *Security Farms* in holding that abstention provisions did not apply because there was no parallel state court proceeding. But the facts of *Skyline Ridge* were analogous to those in *Lazar* and *Security Farms* because the issue was not abstention, but whether the matter should be remanded.

proceeding to the main bankruptcy case and substance rather than form of an asserted core proceeding).

> Although the bankruptcy court should consider all twelve factors, one should not be beguiled into a false sense that a head count will yield the answer with mathematical certainty. Rather, the list serves to provide an intellectual matrix to guide the judge who considers abstention and to enable a reviewing court to ascertain whether there has been an abuse of discretion.

*Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 928 (Bankr. E.D. Cal. 1995) (citing *Eastport Assocs.*, 935 F.2d at 1075). In our view, the bankruptcy court addressed the relevant factors sufficiently to support its ruling. And VOL does not address how the bankruptcy court's clarifications regarding what court could decide the matter should have made any difference to the analysis.

VOL also contends that the bankruptcy court erred in finding that the dispute was a two-party dispute, arguing that HeartWise is necessarily a party to the dispute because it will have to pay the claims if allowed (at the same time, VOL argues that HeartWise has no standing in this appeal).[8] But VOL does not address how the resolution of the dispute will impact the estate. VOL asserts that the bankruptcy court's finding means that the

---

[8] In its reply brief, VOL asserts that HeartWise lacks standing in this appeal and is judicially estopped from arguing that VOL's claim will not be deemed allowed unless and until VOL prevails in the Tenth Circuit appeal because it previously took the position that the claim was noncontingent. We have not relied on HeartWise's arguments in resolving this appeal. Therefore, we need not address its standing.

dispute is a non-core matter, which is error because it is a core matter concerning claims allowance. But the bankruptcy court implicitly, and correctly, found that, while the dispute was ostensibly a core proceeding, its substance was a two-party dispute that did not impact the estate.

VOL also assigns error to the bankruptcy court's abstention decision because its impact was to delay distribution on the claims at issue, which it contends violates the confirmation order. It states that the bankruptcy court "indicated that Claim 3 would be paid from the Court's registry without awaiting resolution of any proceedings before the Tenth Circuit," citing language from the confirmation order in which the bankruptcy court explained why granting a stay of that order, which was requested by another creditor, would prejudice other creditors and HeartWise:

> There would seem to be a powerful incentive for VOL not to appeal an order confirming the Plan because by declining to appeal (and assuming VOL can overcome an objection to . . . one of its claims by its former attorneys), VOL would stand to get paid approximately $14.5 million in cash in relatively short order and to continue to litigate its claimed entitlement to an additional $54 million.

But this verbiage does not order anything, and we fail to see how it supports VOL's arguments. The language in the confirmation order that explicitly relates to the claims dispute is arguably ambiguous in stating that one of the two claims will be paid from the interpleaded funds "depending upon how the interpleader is ultimately resolved." But the confirmed plan and the court's findings and conclusions clarify that no distribution will be

17

made on either claim until all disputes have been resolved, including the Tenth Circuit appeals.

VOL also argues that the bankruptcy court should have considered the merits of the claim objections. First, it contends that the bankruptcy court erred in not disallowing MCG's claim because MCG is not a creditor, i.e., MCG has no right to enforce the Judgment. And second, VOL contends that the bankruptcy court erred in not allowing VOL's claim because MCG's objection was not brought pursuant to § 502(b). We have addressed VOL's first argument in the standing discussion. As noted, with the vacatur of the Disallowance Order and the Objection Order, which VOL does not contest, the question of who has the right to enforce the Judgment is an open question. VOL's second argument also lacks merit. MCG's limited objection did not seek to disallow the claim altogether but to redirect payment to itself based on the engagement agreement. Again, whether that is appropriate remains an open question.

In its reply brief, VOL complains that both appellees raised new arguments on appeal. But those arguments relate to the merits of the claim objections, so we have not relied on them in deciding whether the bankruptcy court correctly abstained.

## CONCLUSION

The bankruptcy court did not abuse its discretion in abstaining from deciding the dispute between VOL and MCG. We therefore AFFIRM.